CITY PLANING & SHINGLE MILL COMPANY v. THE MER-
CHANTS', MANUFACTURERS' & CITIZENS' MUT-
UAL FIRE INSURANCE COMPANY.

*Fire insurance—Construction of clause voiding policy in case mill
should " cease to be operated."*

1. The shutting down of a shingle-mill for 42 days for want of logs which were *in transit*, and detained by reason of low water, but which were daily expected to arrive, and which began to be delivered the day the mill was burned, will not avoid a policy of insurance providing for such a result in case "the mill shall cease to be operated" without notice to or the consent of the insurance company.

2. In such a case it is proper for the plaintiff to show that a planing-mill owned by the insured, and distant from the shingle-mill about 125 feet, and connected with it by cable power which operated both mills, was kept in operation, and that other mills were shut down the same season on account of low water, thus showing that such stoppages were incident to and to be expected in that locality.

Error to Mason. (Judkins, J.) Argued October 11, 1888. Decided November 28, 1888.

*Assumpsit* on an insurance policy. Defendant brings error. Affirmed. The facts are stated in the opinion.

*William E. Grove ( W. H. Haggerty,* of counsel), for appellant, contended:

1. Plaintiff had ceased to operate the mill for 42 days continuously next preceding the fire, without notice to defendant, and the policy was thereby rendered void; citing *Day v. Ins. Co.*, 70 Iowa, 710; *Keith v. Ins. Co.*, 10 Allen, 230; *Mack v. Ins. Co.*, 106 N. Y. 560; *Wooden Ware Works v. Ins. Co.*, 37 Minn. 300; *Reid v. Ins. Co.*, 90 N. Y. 382.

2. Neither the want of logs necessary to the operation of the mill, nor the fact that a supply was daily expected, and that plaintiff intended to resume operations when they came, will justify or excuse the breach; citing *Ins. Co. v. Cherry*, 84 Va. 72; *Day v. Ins. Co.*, 70 Iowa, 710.

*Wing & Samuels*, for plaintiff, contended:

1. Whether under all the facts and circumstances the stoppage of the mill was a breach of the condition in the policy, was a question for the jury; citing Wood, Ins. § 436; *Ins. Co. v. Norton*, 96 U. S. 234.

2. Delays and interruptions incident to the business of conducting a saw-mill, although involving a temporary discontinuance of its active use, will not make the mill "vacant and unoccupied," within the meaning of the policy; citing *Whitney v. Ins. Co.*, 72 N. Y. 120; *Ins. Co. v. Leathers*, 8 Atl. Rep. 424; *Ins. Co. v. Mfg. Co.*, 125 Ill. 131; *Harrington v. Ins. Co.*, 124 Mass. 126; *Stupetski v. Ins. Co.*, 43 Mich. 373; *Ins. Co. v. Tucker*, 92 Ill. 64; *Herrman v. Ins. Co.*, 81 N. Y. 184; *Shackelton v. Fire Office*, 55 Mich. 288; *Poss v. Assurance Co.*, 7 Lea, 704.

MORSE, J. The only question of real importance in this case is whether the mill of plaintiff, at the time it burned, had "ceased to be operated" within the meaning of the policy of insurance sued upon.

The shingle-mill of plaintiff was situated on the bayou of the Pere Marquette lake, at Ludington, about 125 feet east of a planing-mill owned and operated by plaintiff, from which it received its motive power, by a cable connecting both mills. The stock of logs for the use of the shingle-mill was obtained from the pineries some 50 miles from Ludington, and were run down the Pere Marquette river. These logs were delivered by the Pere Marquette Boom Company, which had charge of the running, driv-

ing, sorting, booming, and delivery of logs on this river and its tributaries.

The mill was insured in the defendant company, February 4, 1886, for $2,000, by an agent who was on the ground and filled out the application and made a survey of the premises. Among other things the policy contained the following clause:

"If the insured shall make any false representations of the condition, situation, or occupancy of the property hereby insured, or shall conceal any fact material to the risk, or in case of overvaluation, or any misrepresentation whatever, by the insured, either in a written application or otherwise, or if the insured shall have, or shall hereafter effect, any other insurance on the property hereby insured, or on any part thereof, without the permission of this company indorsed hereon, or if the risk shall be increased either by the occupancy of the premises in such a manner as to increase the hazard, or by the erection or occupancy of adjacent buildings, or if the premises shall become vacant or unoccupied, or, if a mill or manufactory, it shall cease to be operated (unless shut down for repairs), without a notice to and consent of this company indorsed hereon in each and every case, this policy shall become void:

"PROVIDED, however, that mills or manufactories capable of being operated during certain seasons only shall not be deemed vacant when shut down for the customary period."

The mill was burned September 10, 1886, and totally destroyed. At the time of the fire it was not running, and had not been running since July 29, 1886. On the last-named day the plaintiff shows (and it was not disputed in the evidence) that the stock of logs in its boom was exhausted, and the operations of the mill temporarily suspended. A new supply of logs was expected soon, and from day to day up to the time of the burning. The plaintiff had logs in the Pere Marquette river in course of transportation by the boom company, and a boom of logs for its use reached the mill on the day of

the fire.   The planing-mill was kept in operation all the time, and the shingle-mill crew were waiting, expecting to go to work when logs arrived.

It was also shown that the summer of 1886 was a very dry one, and the water being low was the reason of the logs being delayed.   The mill was not shut down for good, or for repairs, but temporarily closed waiting for logs.   No notice of the stoppage was sent to the insurance company, as the plaintiff claims, because work was intended to be resumed as soon as the logs came, and they were expected daily.   It was further shown, against the objection and exception of defendant, that it was a usual and frequent occurrence that other mills in the same locality were shut down or unable to operate this same season and other seasons on account of the low water.

The defendant claimed on the trial that it was not liable, because the mill had ceased to be operated without notice to it, in violation of the clause in the policy heretofore quoted.   The court submitted this question to the jury, who found specially that the mill had not ceased to be operated within the meaning of the policy.   The plaintiff recovered.

The court did not err in so submitting the question. Indeed, from the undisputed evidence, as a matter of law, it must be held that the clause was not violated.   The stoppage of the mill was occasioned solely by the want of logs to manufacture.   The logs were expected daily, and their not being received was not the fault of plaintiff. It was a mere temporary suspension, which, in the first place, was supposed would only last a few days, and after that from day to day.   This clause cannot mean that a stoppage of this kind for a day, or even a week, for want of running material, an event quite likely to occur once

72 MICH,—42.

or more in any season, would be considered "ceasing to operate." The policy speaks of premises becoming vacant or unoccupied "or, if a mill or manufactory, it shall cease to be operated." This must mean something more than a temporary suspension. It must mean a closing with the intention of ceasing operation, not a shutting down for a few days or weeks because of the happening of events incident to the conducting of a mill in that locality, and which might be reasonably expected, such as the want of logs because of low water, which caused the suspension in this case. See *Whitney v. Ins. Co.*, 72 N. Y. 120; *Ins. Co. v. Leathers*, 8 Atl. Rep. 424; *Ins. Co. v. Mfg. Co.*, 125 Ill. 131 (17 N. E. Rep. 776). See, also, *Stupetski v. Ins. Co.*, 43 Mich. 373 (5 N. W. Rep. 401); *Shackelton v. Fire Office*, 55 Id. 288 (21 N. W. Rep. 343); *Poss v. Assurance Co.*, 7 Lea, 704.

It was proper to show the location of the planing-mill and its connection with the mill burned, and that it was in operation, as a part of the surroundings of the fire, and as bearing on the main question. So the fact of mills shutting down temporarily for the same reason as this mill was admissible, showing that such stoppages were incident to and to be expected in that locality.

After the mill was burned there was considerable correspondence between the companies, as well as interviews between the members of the plaintiff corporation and the president and secretary of the defendant. The president of the company visited Ludington to ascertain about the loss in the latter part of September, 1886. On that occasion the plaintiff's evidence shows that he was informed of the exact time, 42 days, that the mill was idle. He admits he was told the mill was idle, but did not suppose it was over 10 days. The defendant company, in answer to an inquiry, was informed by letter dated Janu-

ary 3, 1887, of the number of days the mill had been shut down. After that the secretary at Grand Rapids called the attention of Mr. Filer, one of the members of the plaintiff company, to the clause in the policy, but said the insurance company did not intend to stand on technicalities. The first intimation given plaintiff that defendant intended to resist payment of the loss was in a letter, written March 9, 1887, six months after the fire.

The question whether the defendant, under these circumstances, had not waived the defense here insisted upon, was also submitted to the jury, who found a waiver. We think there was no error in this. We have not set out in this opinion the full facts upon which the waiver was claimed, because we think the plaintiff, under the law, as applied to the undisputed facts, was entitled to a verdict, waiver or no waiver. But the facts claimed, if believed by the jury, were in law sufficient to support their finding that the defense was waived.

We find no error in the case. The judgment is affirmed, with costs.

The other Justices concurred.