THE KANSAS MILL OWNERS AND MANUFACTURERS MUTUAL FIRE INSURANCE COMPANY v. E. W. METCALF.

### No. 10659.

FIRE INSURANCE POLICY — *agreement, in application for, "to keep a watchman on the premises," etc., not violated by watchman's mere temporary absence.* An agreement, made in an application for a policy of insurance on mill property, "to keep a watchman on the premises at all times when the mill is not in operation," is not violated by the absence of the watchman in a tent about two hundred feet distant from the mill-building for a couple of hours preceding the breaking out of the fire which caused the destruction of the property.

Error from Douglas District Court.    A. W. Benson, Judge.    Opinion filed May 7, 1898.    *Affirmed.*

*W. W. Nevison,* for plaintiff in error.

*A. W. Benson* and *W. C. Spangler,* for defendant in error.

DOSTER, C. J.  Mrs. S. E. F. Arter was the owner of a mill building, fixtures and machinery, and miller's stock.  It was insured by the plaintiff in error.  The amount of the policy was payable in the event of loss to the defendant in error.  The mill building, with other insured property, was destroyed by fire about 12 o'clock at night.  In the application for the insurance the question was asked : "Do you agree to keep a watchman on the premises at all times when ( the mill is ) not in operation?"  This question was answered, "yes."  This question and its answer, of course, formed a part of the insurance contract.  Suit was brought upon the policy by the defendant in error, the assignee under the contingency of the loss which occurred.  Verdict was returned and judgment rendered for him, and the defendant, the Insurance Company, prosecuted error to this court.

The testimony in behalf of the plaintiff tended to

show that, in the evening preceding the fire, the mill was shut down for the night; that Mrs. Arter engaged one Randolph as watchman during the time it was shut down; that he in turn engaged one Aldrich, the engineer of the mill, to act in his place; that Aldrich was in and about the mill until 10 o'clock P. M., and then went to a tent about two hundred feet distant, which was used by him and his family for household purposes; that he sat in the tent until he heard the alarm of fire; and, going out, he discovered the mill in flames. The special findings of the jury were in accordance with this testimony. Two questions arise. First. Was the suspension of the work of the mill over night a cessation of its operation, within the meaning of the agreement contained in the application for insurance? Second. If so, was a watchman kept upon the premises during such non-operation of the mill? In relation to these two questions the court below instructed the jury as follows:

" The language used in this agreement is to be taken in its ordinary sense and significance, and the agreement should be construed in the light of common observation and experience. Still some suggestions may be helpful. Thus, when a contract requires a thing to be done, but is silent as to the particular manner of performance, the law holds that it must be reasonable in this respect, having regard to the object and purpose of the stipulation, which, in this case, is the safety of the property. If it is done in the manner in which men of ordinary care and skill in similar business manage their own affairs of like kind, it is ordinarily sufficient. A mere temporary absence of the watchman from the premises in circumstances where a man of reasonable prudence would do the like, would not constitute a breach of the agreement. It does not require that the sole duty of the watchman shall be to watch, and that he shall always be present. He may perform other duties if they do not materially impair his usefulness as a watchman, and he may be

temporarily or casually absent, whenever a man of reasonable skill and prudence exercising reasonable and ordinary diligence, would do the same. The functions and duties of a watchman vary in different places and circumstances, according to the danger to which the property is exposed, and the nature and value of the property. The court cannot, in the nature of things, precisely define what particular care a watchman should exercise. The jury must determine that in the particular case. The insured, however, was bound by her contract to have a watchman on the premises when the mill was not in operation and that watchman was bound to exercise reasonable care and diligence in attending to his duties, considering the situation, nature and value of the property, and the dangers that might reasonably be apprehended.

" It is proper, also, for me to say, that I do not regard the stoppage of the mill at night, while business is ordinarily and generally suspended, as ceasing to operate it, where it is regularly operated during the usual working hours each day. The words, ' not in operation,' refer to times when work in the mill is not carried on ; when it is lying idle, or shut down, and not in the usual nightly suspension of business. With these observations you must find as a question of fact whether the owner, Mrs. Arter, complied with her agreement respecting a watchman, you being the sole judges of the facts."

We approve this instruction so far as it relates to the character and degree of watchfulness to be exercised under the agreement before quoted. Admitting that the shutting down of the mill for the night was a suspension of its operation within the meaning of the insurance contract, yet a watchman was kept on the premises within the terms of the agreement as defined by the court. The jury so found, and the rules laid down by them by which their conclusion was reached were correct. What we regard as a leading case, and one quite closely in point, is *Hanover Fire Insurance Company v. Gustin*, 40 Neb. 828. It was there

held that "the statement in the application for the issuance of a policy of insurance on a planing mill, that 'a watchman is kept on the premises during the night and at all other times when the works are not in operation or the workmen present,' should receive a reasonable construction, and therefore the mere temporary absence·of such watchman within the time contemplated did not necessarily relieve the insurer from liability for loss caused by a fire which originated during such absence."

The opinion following is cogent in reasoning, is replete with citations of authorities, and fully sustains the instruction of the court so far as the one question is concerned.    Whether the court erred in that part of the instruction which defined the meaning of the words "not in operation," we need not inquire.    If it did, the error was not prejudicial, because the keeping of a watchman on the premises as though the mill " were not in operation," fulfilled all the requirements of the definition of those words as proposed by plaintiff in error.

A question is raised as to the amount of an attorney's fee allowed to the defendant in error.    It is without merit, however.

The judgment of the court below is affirmed.