CENTRAL MONTANA MINES COMPANY v. FIREMAN'S FUND INSURANCE COMPANY.

SAME v. ROYAL INSURANCE COMPANY.[1]

May 27, 1904.

Nos. 13,788, 13,789—(46, 47).

**Fire Insurance.**

Certain mining property, consisting of a quartzmill, hoist building, bunkhouse, assay office, and other buildings necessary and constituting a part of the entire system, were insured against fire.  The policies specified specific amounts upon the mill and contents, and upon the other buildings and their contents, and contained the following warranties: "Warranted by the assured that at all times when the property herein described shall be idle or inoperative, a constant day and night watchman shall be kept on duty, and provided that if such property be idle or shut down for more than thirty days at any one time notice must be given this company and permission to remain idle for such time must be indorsed hereon, or this policy shall immediately cease and determine." "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the building herein described,

[1] Reported in 99 N. W. 1120, 100 N. W. 3.

whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days." *Held:*

1. The property described in the policies referred to and included the entire system, and not the particular property specified as the "mill," which, under the evidence, was not shut down and idle within the meaning of the warranties.

2. The premises described in the policies were not vacant and unoccupied within the meaning of the warranties.

Separate actions in the district court for Ramsey county to recover from each defendant $9,800 upon a fire insurance policy. The cases were tried together before Orr, J., and a jury, which rendered separate verdicts in favor of plaintiff for $5,145 in each case. From an order denying a motion for judgment notwithstanding the verdict and from an order granting plaintiff's motion for a new trial in each case defendants separately appealed. Order granting new trial affirmed.

*Lawler & Arnold* and *Barger & Hicks,* for appellants.

*Nelson & Bramhall,* for respondent.

LEWIS, J.

February 6, 1902, defendant companies each issued a policy of insurance to plaintiff, indemnifying it against loss or damage on each of the following items, not exceeding the gross sum of $12,000 by each company:

> $7,000 on frame metal-roofed building and additions thereto, including foundations and all permanent fixtures, occupied as a steam power quartzmill, situate on the "Spotted Horse" claim, in Warm Spring (unorganized) Mining District, about one-half mile from Maiden, and about twenty miles from this agency, in Fergus county, Montana; $4,000 on engines and boilers, connections, settings, and stacks; $7,600 on fixtures, fixed and movable machinery, shafting, gearing, belting, crushers, mills, tanks, settlers, appurtenances, implements and apparatus, mill and mining tools, and supplies; and $1,000 on dynamos, exciters, lamps, switches, wires, switchboards and other electrical appliances, all while contained in the above-described building; $1,000 on the frame, metal and shingle roofed building occupied as an office; $200 on office furni-

ture and fixtures while contained in the above-described building; $2,000 on two-story shingle-roofed, frame boarding-house situated on above-described premises; $100 on the frame assay house; $500 on assay apparatus, scales, instruments, and all assay supplies and fixtures while contained in above-described assay house; $100 on frame barn situated on above-described premises; $200 on horses contained in said barn, not to exceed $50 on any one animal; $300 on frame bunkhouse situated on above-described premises.

On the following July 11 a fire occurred which destroyed the steam power quartzmill described in the first item, and the three items following, contained therein.

Each of the policies recited the following warranty:

Warranted by the assured that at all times when the property herein described shall be idle or inoperative, a constant day and night watchman shall be kept on duty, and provided that if such property be idle or shut down for more than thirty days at any one time notice must be given this company and permission to remain idle for such time must be indorsed hereon, or this policy shall immediately cease and determine.

And the further warranty reading: This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days.

This action was brought to recover the amount of the loss of the mill and its contents, and the defense was interposed that both of the warranties had been broken, rendering the policies void. A verdict was returned for plaintiff against each company for $5,145. Plaintiff moved for a new trial upon the grounds: First, that the verdicts were not justified by the evidence, and contrary to law; second, because of errors of law occurring at the trial, and duly excepted to on part of the plaintiff. Defendants moved for judgment notwithstanding the verdict, and, during the trial and after plaintiff rested, moved the court to direct a verdict in their favor. The court granted plain-

tiff's motion for a new trial, and denied the motion of defendants for judgment notwithstanding the verdict. Defendants appealed from both orders, the same being included in one notice, but at the time of the service of the notice more than thirty days had elapsed from the time the order was granted refusing defendants' motion for judgment notwithstanding the verdict.

There are three assignments of error: (1) The court erred in refusing to direct the jury to return a verdict for defendants, and each thereof. (2) The court erred in overruling defendants' motions for judgment notwithstanding the verdict. (3) The court erred in granting plaintiff a new trial.

The third assignment is proper, within the rule applied in Wilcox v. Mutual Fire Ins. Co., 81 Minn. 478, 84 N. W. 334, and, in view of the conclusion reached upon the merits of the case, we will proceed to its discussion, without deciding whether defendants are entitled to be heard upon their appeal from the order denying the motion for judgment non obstante.

The entire plant known as the "Spotted Horse Mine" consisted of the quartz stamp-mill, office building, boarding house, two assay buildings, barn, bunkhouse, hoist building, blacksmith shop, dwelling house, tank building, tank, and tailings reservoir. These buildings were located independently of each other, and at such distances as to apparently as much as possible avoid danger of fire and yet be within convenient distances of each other. The quartzmill building stood rather to one side, the tank building and tailings reservoir only about 50 feet distant on the one side, and upon the other side stood the other buildings at varying distances—the boarding house 460 feet, and the principal assay office 359 feet, the barn 330 feet, and the bunkhouse 282 feet distant, and all were covered by the policies. The buildings not insured were the hoist building, 190 feet, the blacksmith shop, 120 feet, and the dwelling house 347 feet, distant from the mill. When in full operation the business consisted in mining ore from the shafts and tunnels underground, lifting it to the surface by means of the hoist, and tramming it to the mill, crushing the rock, and then treating the product by means of the cyanide process.

Prior to the time the insurance was written, the plant was in charge of a receiver, and operated by him until November 2, 1901, when it

was closed, the water drawn from the pipes and boilers and fires from the ovens, and preparation made for the winter. However, from the time the insurance was written, February 6, 1902, until the time of the fire, July 11, 1902, the mining continued, and from twenty to thirty men were employed during the winter, and all of the buildings, with the exception of the quartzmill, were occupied as necessity required. The hoist was operated constantly by a day and night shift, and in this manner the business was being conducted when the fire occurred at 8.30 p. m. From four to six weeks prior to the fire, work was commenced in the quartzmill to get it ready for operation, and during the entire time between February 6 and July 11 it was occupied to some extent for the storage of tools, supplies, and machinery, in addition to the permanent machinery located therein, and persons were in and out every day. But with the exception here noted, the mill building remained closed, generally locked, and there was no watchman in attendance, either by day or night, at any part of the premises.

Such being the evidence, the court at the trial instructed the jury, as a matter of law, the words "property herein described" meant the property as a whole, and that the warranty with reference to the watchman was not broken by reason of the quartzmill being shut down. As to the other warranty, the court submitted that question to the jury, to be determined by them, in view of all the surroundings and circumstances, whether the mill building was vacant and unoccupied at the time of the fire. Plaintiff proceeded upon the theory that there was no violation of the warranties, and, not having pleaded knowledge of the condition of the plant as to occupancy and operation, and waiver by appellants, evidence to that effect was properly excluded by the trial court, and that question has no bearing upon the issue now under consideration.

There are many decisions bearing upon the question of what constitutes remaining "idle" and "inoperative," and what constitutes "vacancy" and "occupancy." But every case must be examined with reference to its own peculiar circumstances.

In Bellevue v. London, 4 Idaho, 307, 39 Pac. 196, a policy contained this clause: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if a building herein described, whether intended for occupancy by owner or tenant, be or

become vacant or unoccupied, and so remain for ten (10) days." The building insured consisted of a flourmill, and, although not in operation at the time of the fire, it contained a small amount of wheat and bran, and was occasionally visited by the president of the company. The court held that the mill was not vacant and unoccupied within the meaning of the warranty.

In Whitney v. Black, 72 N. Y. 117, a sawmill was closed down for a period of sixteen or eighteen days before the fire, because of an accident and the condition of the water. Held, that the premises were not vacant and unoccupied within the meaning of the policy.

A similar case is Albion Lead Works v. Williamsburg City Fire Ins. Co. (C. C.) 2 Fed. 479, where it was held that a temporary suspension of work for five days, the mill in the meantime being used for the storage and delivery of goods, requiring daily visits by one or two persons, did not render the premises vacant and unoccupied within the meaning of the warranty.

See also McMurray v. Capital, 87 Iowa, 453, 54 N. W. 354, where the insured had been absent several months from a family dwelling, and his family had been away on a visit for eight days, the furniture remaining in the house, which was daily visited by relatives. There being no attempt to abandon the home, it was held that it was not vacant and unoccupied.

To the same effect, see Herrman v. Merchants, 81 N. Y. 184, where the owner of a summer residence removed from it in November, leaving the furniture in it and giving the care of it to a person residing near by, intending to occupy it the following spring. Under this head see also Cummins v. Agricultural, 67 N. Y. 260, where it was held that the removal must be permanent, and an entire abandonment of the house as a place of residence, in order to constitute vacancy.

In City v. Merchants, 72 Mich. 654, 40 N. W. 777, the condition of the policy was: "If the premises shall become vacant or unoccupied, or if a mill or manufactory shall cease to be operated, without notice to and consent of the company, the policy shall be void." It was held that it was not broken by a temporary suspension of forty-two days, caused by failure of logs, a new supply being daily expected, but being delayed by reason of low water.

In passing upon warranties against manufactories becoming idle and inoperative, the courts have generally distinguished between a perma-

nent and temporary cessation of operations.   See cases above cited; also Poss v. Western, 75 Tenn. 704; Rosencrans v. North American, 66 Mo. App. 352; Hartford v. Walsh, 54 Ill. 164; McQueeny v. Phœnix, 52 Ark. 257, 12 S. W. 498, where a tenant and a dwelling house in the same inclosure were covered by the same policy for a gross consideration, different amounts being specified for each house, the tenant house became vacated, and both houses were destroyed by fire.   Held, policy not void on account of vacancy of the tenant house.

In Worley v. State, 91 Iowa, 150, 59 N. W. 16, it was held that a policy of insurance on a house and barn, conditioned to be void if the premises insured became vacant, was void only upon the vacancy of both properties.   Where the evidence is clear that the premises have been abandoned, the courts have not hesitated to declare such warranties broken, as in Halpin v. Phenix, 118 N. Y. 165, 23 N. E. 482, where the building insured was a morocco factory, vacated by tenants, and the key given up to the owner's renting agent.

In view of the fact that in the case before us each of the buildings covered by the insurance was a part of a single plant or system, each necessary for its complete operation, the words "property herein described" and "building herein described," as used in the warranties, have reference to the system or plant as a whole, and not to any particular building, and it does not conclusively appear from the evidence that there was such a vacancy and closing down of operations as to come within the meaning of this language.

If there were any doubt about this conclusion, then, under the rule adopted in Loy v. Home Ins. Co., 24 Minn. 315 (followed by many decisions), the contract must be construed strictly against the insurer, for the reason that the language under consideration was inserted by it for its own benefit and in words of its own choice, conceding it to be ambiguous.

Order affirmed.

On June 20, 1904, the following opinion was filed:

PER CURIAM.

The motion for reargument is based upon the assertion that these cases are ruled by Plath v. Minnesota F. M. F. Ins. Assn., 23 Minn. 479, to which no reference was made in the decision, although called

to the attention of the court. In deference to counsel's sincerity, and in order to remove possible future confusion, we will explain our views of the Plath case. In that action the consideration was for the gross amount of $1,150 insurance, apportioned in specific amounts upon a dwelling, household goods, and farming implements. In the case now before us the consideration was entire ($360 in each company), for the gross amount of $12,000 insurance, apportioned upon different buildings in specific amounts. So far the cases are similar, but here the similarity ends. The policy in the Plath case contained a clause that it would be void if the insured should mortgage the property without notice. The insured did mortgage a part of the property, and the court held that, the contract being entire and indivisible, the condition was broken and the policy determined.

In the case before us the warranty provided the policy should become void if the "property" therein described should be shut down or become inoperative, vacant, unoccupied, etc.; and we held that the term "property" referred to the entire plant, and not to any specific building, and further that, if the language was ambiguous, it must be strictly construed against the insurer. In the Plath case there was no uncertainty. The language meant that, if any part of the property was mortgaged, the policy would be canceled. That case is clearly distinguishable from this, and there was no intention to overrule it.

Motion denied.