[S. F. No. 3498.    In Bank.—February 6, 1907.]

## CHARLES H. MACKINTOSH, Appellant, v. AGRICULTURAL FIRE INSURANCE COMPANY, Respondent.

FIRE INSURANCE—CHANGE OF INTEREST—OPTION TO PURCHASE NOT EXERCISED.—A mere option given to a third party to purchase which is not exercised by payment of the purchase money does not create a change of interest in the property insured against fire within the meaning of the fire-insurance policy, avoiding it for a change of interest.

ID.—CONSTRUCTION OF POLICY—LOSS AND RISK NOT CHANGED.—The change of interest referred to in the policy, in view of the well-known rule of construction, that policies are to be construed most strongly against the insurer, refers to some change of interest, which would make the loss in case of destruction fall upon the buyer, and cause the insurer to lose his interest in protecting the property from fire, and not as referring to a mere option to purchase, which does not change the risk in case of loss.

ID.—QUALIFIED POSSESSION TO TEST PROPERTY INSURED—CHANGE NOT EFFECTED—COMMON POSSESSION.—Where the person holding the option to purchase mining property insured had only a qualified possession, for the purpose of operating a smelter thereon to test slag and ore, under an agreement that during such testing the insured giver of the option or his agent "shall have full access to said property and its management, in every respect the same as though to all intents and purposes the work was being done by him," and it appears that the insured kept a watchman on the premises, who was holding for him, such common possession did not work the change of possession which would avoid the policy.

ID.—INCREASED HAZARD—SMELTING FURNACE—PERMISSION BY GENERAL AGENTS — INCREASED PREMIUM — INSUFFICIENT INDORSEMENT — WAIVER—ESTOPPEL.—Where an increased hazard from a smelting furnace was permitted by the general agents of the insurance company, with full knowledge of the facts, for an increased premium, who agreed to indorse the same upon the policy, but made an insufficient indorsement, owing to an erroneous description of the smelter as being in the policy, the case must be considered as

if the agreement was not indorsed upon the policy under the law as to waiver and estoppel created by the conduct of general agents authorized to make contracts.

ID.—STIPULATION AGAINST WAIVER OR PERMISSION NOT INDORSED—WAIVER BY CONDUCT.—Stipulations in a policy against waiver or permission not indorsed do not preclude a waiver by the conduct of authorized agents in regard to future operations of the company, nor prevent the insured from relying on an oral contract by such agents to make an indorsement not effectively made.

ID.—FAILURE TO DESCRIBE SMELTER IN INDORSEMENT—ESTOPPEL.—The failure of the general agents of the company to accurately describe the smelter in the slip attached to the policy setting forth the permission for the additional premium, was the fault of the company, and any attempt on its part to avoid the policy because of such failure would at once create an estoppel which would prevent the company from taking advantage of it.

ID.—POWER OF GENERAL AGENTS TO WAIVE FORFEITURES—ORAL WAIVER CONSTITUTING NEW CONTRACT.—General agents authorized to issue and deliver new policies are regarded as having the same power to waive conditions and forfeitures as the companies themselves. The limitations embodied in the stipulation do not prevent them from making new contracts; and waivers constituting a new contract upon sufficient consideration need not be evidenced by writing nor indorsed upon the policy, if made by a general agent having power to make the contract, no matter what limitations or conditions may be expressed in the policy.

ID.—DUTY TO HAVE WATCHMAN—WORKS NOT IDLE—CUSTOMARY OPERATION—PRESUMPTION.—A clause in the policy making it the duty to keep a watchman day and night when the works are idle does not apply where the works are operated daily during usual and customary hours. There is no evidence that it was usual or customary to operate such works at night, and the presumption is to the contrary, and in the absence of such evidence on the part of the defendant it must be concluded that the policy did not require a watchman at night when the works were in operation during the day; and the fact that one was employed and failed to watch did not affect the validity of the policy.

ID.—FORFEITURE NOT FAVORED—SUBSTANTIAL OPERATION OF PART OF WORKS.—Forfeitures are not favored in law. It was not necessary that the whole works should be kept in operation or that all of the furnaces should be kept going every day. A substantial operation of the works is all that is required.

APPEAL from a judgment of the Superior Court of Alameda County.   S. P. Hall, Judge.

The facts are stated in the opinion of the court.

Campbell, Metson & Campbell, G. W. Baker, and Thomas H. Breeze, for Appellant.

Goodfellow & Eells, for Respondent.

SHAW, J.—The action is upon a policy of insurance. The judgment was given for the defendant. The appeal was taken from the judgment within sixty days after its rendition, and the record is accompanied by a bill of exceptions.

The insurance company, in defense, alleged that there had been four several violations of the terms of the policy by the insured, without the consent of the company, and that the policy had been forfeited thereby, to wit: 1. That there had been a change of possession of the property; 2. That there had been a change of interest in the property insured; 3. That there had been an increase of hazard which was prohibited by the conditions of the policy; 4. That the property insured was idle and inoperative, and the insured had failed to keep a watchman constantly on duty, as the policy, in that event, required. The findings were in favor of the defendant on all these points. There was no substantial conflict in the evidence, and no serious dispute about the facts. The findings were manifestly based upon the court's conclusions as to the meaning and legal effect of the policy and the subsequent transactions of the parties. The decision of the case depends on the question whether or not the findings were justified by the evidence.

1. The first two defenses may be considered together. The change of interest and possession, if any, arose out of a proposed sale by the plaintiff to one G. W. Baker, after the issuance of the policy. A written agreement was executed between them, Mackintosh being the party of the first part and Baker being the party of the second part. It recited that the price of twenty-two thousand dollars for the property and certain slag and ore situated thereon had been agreed on, and that Baker was desirous of buying it at that price. It thereupon declared that he agreed that he would "purchase said premises and property" for said price, "in the following manner, that is to say:—

"It is agreed between the parties hereto that the said party of the first part shall execute to the said party of the second

part a good and sufficient deed of the premises above mentioned and described, together with a bill of sale of the slag and ore situated thereon, and place the same in escrow with A. M. McDonald to be delivered to the party of the second part upon the payment of the said sum of $22,000 on or before sixty days from the date hereof.

"In case the said $22,000 is not fully paid within sixty days from the date hereof as aforesaid, said premises shall be vacated by the Vulcan Smelting and Refining Company *and surrendered by the party of the second part free and clear of all encumbrances* of whatsoever kind or nature made or suffered by the said Vulcan Smelting and Refining Company, and shall also surrender to the party of the first part the product of all ores smelted or reduced in its furnace from said slag-dumps while occupying the same.

"It is further agreed between the parties hereto that, *during the time the party of the second part is in possession of said property, the said party of the first part or his agent A. M. McDonald shall have free access to said property and its management in every respect, the same as though to all intents and purposes the work was being done by him, instead of by the party of the second part,* and during the time said work is carried forward the said party of the second part shall in every way protect said property and premises from any encroachments or depredations or damage of any kind, and not endanger the said premises by fire, or from any other cause.

"The sum of $400 is hereby acknowledged to have been received upon this contract by the party of the first part and the further sum of $173 is to be paid to A. M. McDonald upon demand, which said sum, *in case of purchase,* is to be credited as part of the purchase price, and *in case of default is to be considered as rent of the premises during the occupation of the party of the second part,* as herein stated, and forfeited to the party of the first part.

"Time is of the essence of this contract.

"This contract shall not be assigned by the party of the second part until payment is made." (The italics are ours.)

Baker was acting in the premises as agent of the Vulcan Company. Prior to the execution of this agreement a previous agreement had been made between the same parties whereby Baker had obtained an option for sixty days for the purchase

of said premises and property. That time had expired and this agreement was made for the purpose of renewing the option. Under the previous agreement Baker had taken possession of the premises and put up thereon a small six-ton smelting furnace, which he had been operating, for the purpose of testing the slag and ore upon the premises, in order to be the better able to determine whether or not he desired to purchase the same at the price fixed. In pursuance of the agreement quoted above it was understood that Baker should remain in possession of the premises for the purpose of making such further test of said slag and ore as he might deem necessary to enable him to determine what he desired to do in regard to the purchase of the property. When the time expired Baker surrendered the property and refused to purchase.

Taking the circumstances thus surrounding the parties and the language of the contract together, we are of the opinion that it was not an absolute agreement on the part of Baker to purchase the property, but was simply an option whereby he had the privilege of purchasing the same at any time within the sixty days mentioned, by payment of the price as therein provided. There was therefore no change of interest in the premises by virtue of the contract. The title, interest, and estate in the property remained in Mackintosh, subject to be divested only by the payment of the money as provided in the contract. Upon failure to pay the money as provided therein, without any further act whatever on the part of Baker, the privilege to purchase, which he had obtained under the contract, ceased, and the property then remained free from any right in him whatever. All that he possessed prior to the payment of such purchase money was a mere right at his option to purchase or not. This right did not create an interest in him within the meaning of that term as used in the policy of insurance. The change of interest referred to in the policy, in view of the well-known rule of construction applied to insurance policies requiring them to be construed most strongly against the insurer, refers to some change of interest which would make the loss, in case of destruction, fall upon the buyer, so that by such change the original policy-holder would lose his interest in maintaining the property and protecting it from fire. It does not refer to a mere right which another party may acquire which does not change the risk in

case of loss, nor give the third party more than a mere option to purchase the property. This rule regarding the change of risk might be different if it were not for the qualified character of the possession which was given to Baker under the arrangement between the parties. Baker was to have possession of the property merely for the purpose of operating the smelter in order to test the slag and ore, and the seller, notwithstanding such possession, was to have "free access to said property and its management in every respect the same as though to all intents and purposes the work was being done by him" instead of by Baker. Under these circumstances, a loss by fire occurring before the exercise by Baker of his option would fall upon Mackintosh. If it was caused by the negligence of Baker, Mackintosh could recover from him the damage, both by reason of the express covenant in the contract and by the general principles of law requiring him to exercise ordinary care in the use of another's property. This emphasizes and illustrates the proposition that the loss would be caused by the destruction of the property of Mackintosh. If it were the property of Baker, Mackintosh would suffer no damage. The contract could not have been enforced by Mackintosh as a contract of sale and purchase. The terms of the policy required a change of interest in order to work a forfeiture. This contract cannot be construed to have passed any interest whatever in the property to Baker, but merely a prospective right to obtain an interest. The interest would pass when he exercised the option and not before.

The same considerations apply to the contention that there was a change of possession of the premises which Baker was holding under the owner, Mackintosh. He had no exclusive right to the property, and it further appeared that during the occupancy of Baker a watchman was kept on the property who was under the employment of and was holding for the seller, Mackintosh. Such common possession did not work the change of possession which would be required to avoid the policy. Furthermore, as will be hereafter seen, we think the conduct of the agents of the company was such as to waive any forfeiture on the ground of this particular change of possession.

2. The next defense is that there was an increase of hazard caused by the acts of the insured which, by the terms of the

policy, would cause its forfeiture. This increase of hazard arose from the erection upon the premises of a certain six-ton furnace by Mr. Baker, which was used by him for the purpose of testing the slag and ore upon the premises. This was erected some time in January, 1901, two months prior to the agreement above recited between Mackintosh and Baker. Before the erection of this smelting furnace, and before making the arrangement whereby Baker was to have possession of the works and operate the furnace for that purpose, the plaintiff's agent called upon the general agent of the defendant company and explained to him the circumstances and the proposed erection and operation of the furnace thereon for the purposes mentioned. The agent caused a rate to be fixed, and thereupon gave permission to erect said furnace and operate the same for sixty days, charging $4.20 for the privilege. This permission expired upon the 16th of March following. The agreement above quoted was executed on that day, and thereupon the parties again called upon the general agent of the insurance company and explained their desire for a renewal of the permission and the purpose to continue the operation of this six-ton furnace for smelting the ore and slag on the premises. Thereupon the agent stated that it would be satisfactory to the company and gave the desired permission, again charging the additional sum of $4.20 for the privilege of so doing, which sum was paid, and the policy delivered to the agent for the proper indorsement. The policy provides that "unless otherwise provided by agreement indorsed hereon or added hereto" the policy should be void if the hazard be increased, or if any change, other than by the death of the insured, takes place in the interest, title, or possession of the property. It further provides that "no officer, agent, or other representative of the company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions or conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." The indorsement made

upon the policy by the general agent of the company was as follows: "In consideration of $4.20 additional permission is hereby granted to operate the within described smelter for a period of forty-five days from this date. (Signed.) Edward Brown & Sons, General Agents." At the time this permission was given the six-ton smelter was on the premises, but it was not mentioned or described in the policy. The indorsement, therefore, did not, upon its face, give permission to operate the six-ton smelter, although doubtless it was so intended. We must consider the case upon the theory that no sufficient indorsement was made of the permission agreed upon and paid for. It is apparent from all the evidence that the parties all acted on the belief that the indorsement gave them permission to operate the six-ton smelter without invalidating the policy, and that the general agents of the company knew they so believed. It will be perceived that the general agent of the company was made fully acquainted with the increase of hazard and the change of occupation or possession contemplated by the parties, and that he agreed that the same might be done, and undertook to attach to the policy the required written permission for the contemplated changes. It further appears from the evidence that the parties, in reliance upon this arrangement, proceeded to operate the six-ton smelter and maintain the divided possession whereby Baker continued to operate the smelter and occupy the premises in conjunction with the watchman employed by the plaintiff.

The effect of such limitations upon the power of agents to waive the conditions in a policy has been a frequent subject of decision in the courts. The doctrine is well settled that such stipulations and limitations in a policy regarding the powers of agents, and the manner of waiving its conditions, do not preclude a waiver by the conduct of authorized agents in regard to future operations upon the premises. In Cooley's Briefs on Insurance (vol. 3, p. 2607), with respect to limitations of this character, it is said: "Even this limitation will not prevent an insured from relying on a parol subsequent waiver by an authorized agent or officer, as 'there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing.' " (*Orient Ins. Co.* v. *Knight*, 197 Ill. 190, [64 N. E. 339]; *Hanover Fire etc. Co.* v. *Dole*, 20 Ind. App. 333, [50 N. E. 772]; *Home Ins.*

*Co.* v. *Gibson,* 72 Miss. 53, [17 South. 13] ; *Wilson* v. *Commercial Ins. Co.,* 51 S. C. 54, [29 S. E. 245, 64 Am. St. Rep. 700] ; *Lamberton* v. *Connecticut F. I. Co.,* 39 Minn. 129, [39 N. W. 76, 1 L. R. A. 222] ; *Renier* v. *Dwelling H. I. Co.,* 74 Wis. 89, [42 N. W. 208].) And again, with respect to subsequent changes, it is said : ''If an insurer, or authorized agent, consents to changes which are required to be indorsed on the policy, and promises to make the necessary indorsement, having access to the policy for this purpose, but fails to make the indorsement through mistake, oversight or neglect, the insurer will be bound, if not by a waiver, at least by an estoppel *in pais.*'' (3 Cooley's Briefs on Insurance, 2617.) To this point very many cases are cited. And further on this subject in the same work (p. 2658), it is said : ''If an insurance company, with knowledge of facts vitiating a policy, by its acts, declarations or dealings leads the insured to regard himself as protected by the policy, or induces him to incur trouble or expense, such acts, transactions or declarations will operate as a waiver of forfeiture, and estop the company from relying thereon as a defense to an action on the policy.'' The permission to operate the six-ton smelter was made in consideration of the additional rate charged and paid. It was in effect a new contract executed between the parties, a contract which the law does not require to be in writing. (*Knarston* v. *Manhattan L. I. Co.,* 140 Cal. 57, [73 Pac. 740].) The agent who made this new contract was a general agent of the company and had authority to issue and deliver policies. ''Agents authorized to issue and deliver policies are regarded as having the same power to waive conditions in policies as the companies themselves, and can therefore waive conditions and forfeitures.'' (3 Cooley's Briefs, pp. 2479, 2504, 2505.) This rule includes all persons empowered to conclude contracts of insurance without first referring the negotiations to their principals, such as those who have ''full power to effect contracts of insurance, to fix rates of premiums, to consent to changes, to make indorsements and cancel policies.'' (Cooley's Briefs, p. 2480.) Such limitations do not prevent the making of new contracts by the company or its authorized agents. (*Home Ins. Co.* v. *Nichols,* (Tex. Civ. App.) 72 S. W. 440 ; *Home Ins. Co.* v. *Gibson,* 72 Miss. 58, [17 South. 13].) And as a general rule a subsequent parol waiver by a general agent of conditions in a

policy are valid, although the policy requires them to be in writing. (*Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 261, [17 Am. St. Rep. 233, 23 Pac. 869] ; 3 Cooley's Briefs, pp. 2601, 2602-2608.) Waivers such as that here made, constituting, as they do, a new contract upon a sufficient consideration, need not be evidenced by a writing, and need not be indorsed on the policy, no matter what limitations or conditions are expressed in the policy, provided always they are made by an agent who would otherwise have authority to make the contract.   (3 Cooley's Briefs, p. 2695.)

In *Gladding* v. *California etc. Ins. Co.*, 66 Cal. 6, [4 Pac. 764], the agent who attempted to waive the conditions was a local agent, and not, as here, a general agent, who, for contractual purposes, impersonated the company itself.   The general remarks contained in the opinion in that case cannot be deemed authority, so far as they indicate a lack of power in the general agent to waive such conditions by acts amounting to a new contract or an estoppel, and without indorsement upon or attached to the policy.   In *Shuggart* v. *Lycoming Fire Ins. Co.*, 55 Cal. 408, and *Enos* v. *Sun Ins. Co.*, 67 Cal. 621, · [8 Pac. 379], it was held that a mere local agent was without such authority unless specially empowered.   This is the substance of the decision of the supreme court of the United States in *Northern Assur. Co.* v. *Grand View B. A.*, 183 U. S. 308, [22 Sup. Ct. Rep. 153, 154].   In the present case it clearly appears that the agents who gave the permission and made the written indorsement were the general agents of the company, with full powers.   This indeed is not controverted. The failure to accurately describe the six-ton smelter in the slip attached to the policy was the fault of the defendant, and any attempt on its part to avoid the policy because of such failure would at once create an estoppel which would prevent the company from taking advantage of the misdescription. We are therefore of the opinion that the company waived the forfeiture which otherwise might have been caused by the increase of risk and partial change of possession in this case, and that it is now estopped from claiming such forfeiture after having knowingly allowed the parties to act in the belief that they had received the privilege which they were exercising and for which they had paid the additional premium.

3. The remaining defense is that the plaintiff has violated

CL Cal.—29

the following clause in the policy: "Permission granted for the above described works to remain idle, it being warranted by the assured that at all times when the above works are idle or inoperative, one or more watchmen shall be constantly on duty at night." At the time of the fire there was a watchman, in the employ of the plaintiff, on the premises, whose duty it was to keep guard and watch against danger from fire. The fire occurred on April 2, 1901, near midnight, and at that time, instead of being on watch, he had gone to bed and was asleep. We think under these circumstances it must be admitted that the plaintiff was guilty of a violation of this condition, if, as a fact, he was bound, under the other circumstances attending the case, to keep a watchman constantly on duty during the night-time. The obligation to keep a watchman on duty would not be observed by having a man asleep upon the premises. Because of this failure of the watchman to keep on duty the policy would be void, unless the works were neither idle nor inoperative at the time of the fire, within the meaning of the above clause. This clause did not require that the plaintiff should have been running the works day and night. What is contemplated by such a clause is the ordinary operation of the works during usual and customary hours. (*Whitney* v. *Black River Ins. Co.*, 72 N. Y. 117, [28 Am. Rep. 116]; *Halpin* v. *Phoenix Ins. Co.*, 118 N. Y. 165, [23 N. E. 482]; *Kansas etc. Ins. Co.* v. *Metcalf*, 59 Kan. 383, [53 Pac. 68].) There was no evidence that it was usual or customary to operate such works at night, and the presumption is not that such is the case, but the contrary. (Code Civ. Proc., sec. 1963, subds. 20, 28.) The effect of such proof would be to establish a forfeiture, and consequently the burden was on the defendant to prove the usage or custom. In the absence of such proof we must conclude that the policy did not require that there should be a watchman on duty at night during times when the works were in operation during the day.

From the 16th of March until the night of the fire the six-ton furnace erected by Baker under a shed on the premises thirty feet from the main building was in daily operation in the smelting of slag and ore. This operation required the work of five or six men on the premises. In connection with this work they were using one of the boilers belonging to the works and the water-pipes and tools of the plaintiff, and were

occupying the buildings for the storage of ore and other materials. The six-ton furnace was a smelter, and was used to smelt the slag and ore in a manner substantially the same as that pursued in the use of the fifty-ton smelter covered by the policy. These four large smelters were not in use, nor was any other part of the buildings occupied in the work, except as above stated. Under these circumstances, we think the works were not idle or inoperative, within the meaning of the policy. Forfeitures are not favored in law. It was not necessary that the works should be kept in full operation or that all the furnaces should be kept going every day. A comparatively slight operation would suffice. The operation in good faith of one of the original furnaces would, so far as we can perceive, as effectually serve to prevent danger from fire at night, which was the object to be attained, as the full operation of all. Doubtless if Mackintosh himself had built an additional smelter on the grounds, and had operated the works with that alone, leaving the others idle, it would have been a sufficient performance of the obligation to run the works when there was no night watchman. The increase of the risk by the erection and operation of the six-ton furnace, as we have seen, was waived. That point being disposed of in that way, it is of no consequence, and does not change the legal rights of the parties, that the furnace in use was not one of the four which were insured, nor that it was not used by the plaintiff in person, but by Baker under the direction of the plaintiff or by his permission. There was a substantial operation of the works, which is all that was required. (*Bole* v. *New Hampshire F. I. Co.*, 159 Pa. St. 55, [28 Atl. 205]; *City etc. Mill Co.* v. *Merchant's etc. Ins. Co.*, 72 Mich. 654, [16 Am. St. Rep. 552, 40 N. W. 777]; *Prieger* v. *Exchange M. I. Co.*, 6 Wis. 104.) In *McKenzie* v. *Scottish etc. Ins. Co.*, 112 Cal. 548, [44 Pac. 922], and *Brehm L. Co.* v. *Svea Ins. Co.*, 36 Wash. 520, [79 Pac. 34], there was no operation of the premises at all comparable to that here shown, and these cases are not in point. As the works were not idle or inoperative, the necessity for a night watchman did not exist, and the fact that one was employed, but failed to watch, did not affect the validity of the policy.

The findings are not sustained by the evidence, and the judgment is therefore erroneous.

The judgment is reversed and the cause remanded for a new trial.

Angellotti, J., Sloss, J., McFarland, J., Henshaw, J., and Lorigan, J., concurred.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing, and filed the following opinion thereon on the 11th of March, 1907:—

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause. It is conceded that there was no watchman on duty, but it is held that the works were in operation. This conclusion, in my opinion, is opposed to any reasonable construction of the policy.

I dissent also from the doctrine that the parties to a written contract cannot bind themselves by a stipulation that it shall not be altered except by an agreement in writing. By such a stipulation they merely import into the particular contract the beneficent principle of the statute of frauds, thereby protecting themselves from the consequences of false claims of alterations.

I deprecate especially the disposition of courts to deprive insurers on slight and insufficient grounds of the benefit of proper stipulations and conditions inserted in their policies for the legitimate and laudable purpose of compelling the insured to protect the insured property from unnecessary and easily prevented hazards. The necessary effect of such a course of decision is to increase premium rates, and the final result in the long run is that careful and honest policy-holders pay for the losses of the reckless and dishonest.