TILLAMOOK LUMBERING CO. et al. v. LIVERPOOL & LONDON & GLOBE INS. CO.

(Circuit Court, D. Oregon. December 13, 1909.)

No. 3,304.

INSURANCE (§ 321*)—POLICY—CONSTRUCTION—WATCHMAN CLAUSE—"IDLE OR INOPERATIVE"—"SHUT DOWN."

A fire policy on a sawmill and electric light plant, requiring that at all times when the property remained "idle or inoperative" a constant day and night watchman should be kept on duty, and that, if the property was idle or "shut down" for more than 30 days at a time, permission should be obtained and indorsed on the policy. *Held*, that the words "idle or inoperative" should be construed as synonymous with "shut down," to mean a cessation of operation from the ordinary running of the plant, and not merely the usual shutting down for the night, or over Sunday, or on a holiday; and hence the policy was not broken by the insured's failure to keep a watchman on duty while the plant was temporarily shut down over Sunday.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 321.*

For other definitions, see Words and Phrases, vol. 7, pp. 6501–6502.]

Action by the Tillamook Lumbering Company and another against the Liverpool & London & Globe Insurance Company. Judgment for plaintiffs.

H. T. Botts and Snow & McCamant, for plaintiffs.
Wm. D. Fenton, R. A. Leiter, and Ben C. Dey, for defendant.

WOLVERTON, District Judge. This is an action to recover for loss by fire under an insurance policy. A jury has been waived, and the cause submitted to the court for its findings. The facts are stipulated, and the issues reduced to but one question. This arises under

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

what is designated as the "watchman clause" contained in the policy, which reads as follows:

"It is warranted by the assured that at all times when the property herein described shall be idle or inoperative a constant day and night watchman shall be kept on duty; and provided that, if such property be idle or shut down for more than 30 days at any one time, notice must be given this company, and permission to remain idle for such time must be indorsed hereon, or this policy shall immediately cease and determine."

The property insured included a lumber mill and an electric light plant. The stipulation sets forth:

"That the property covered by the policy of insurance included a lumber mill and an electric light plant; that the lumber mill was running during every business day from the date of the policy to the date of the fire, but was not kept running on Sundays, and was not running at the time of the fire; that the electric light plant was run every night from the date of the policy until the date of the fire, but was not run during the day, and that the property had been run in this manner, and this was the customary way in which the same had been operated, for several years prior to the time of the fire; that the electric light plant was not running at the time of the fire, which occurred about 9 o'clock in the morning of Sunday, the 13th of October, 1907; that it was the intention of the Tillamook Lumbering Company at the time of the fire to continue to run both the lumber mill and electric light plant in the future in all respects as they had been run in the past; that at the time of the fire no watchman, nor any person acting in such capacity, was on duty about the premises of Tillamook Lumbering Company, nor had there been any such watchman or person on duty for several hours prior thereto, nor on any other Sunday during the life of the policy."

If the property which was the subject of the insurance was idle or inoperative at the time the fire occurred, it must be conceded that the plaintiffs cannot recover, because there was no watchman on duty at the time. The question is wholly one of construction. Policies of life and fire insurance are construed, as other contracts, by looking throughout their provisions and ascertaining, if possible, the true intendment and purpose of the contracting parties, except where ambiguity or incongruity arises. Then the construction more favorable to the insured is adopted, because of the usual custom of the insurance companies in propounding their own forms of policies and contracts; the insured being obliged to take what the company offers, notwithstanding the writing, as a rule, is accompanied with much prolixity and detail of stipulation, covenant, and warrant. National Bank v. Insurance Co., 95 U. S. 673, 24 L. Ed. 563; McMaster v. New York Life Ins. Co., 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 61; Royal Insurance Co. v. Martin, 192 U. S. 149, 162, 24 Sup. Ct. 247, 48 L. Ed. 385; Fenton v. Fidelity & Casualty Co., 36 Or. 283, 56 Pac. 1096, 48 L. R. A. 770; Stringham v. Mutual Ins. Co., 44 Or. 447, 75 Pac. 822; Stinchcombe v. N. Y. Life Ins. Co., 46 Or. 316, 322, 80 Pac. 213.

My attention has been called to section 712, B. & C. Comp. Or., which it is claimed prescribes a different rule. That rule was formulated, no doubt, to meet the exigencies of the situation where the parties contract and agree together upon an equal footing in all respects. As I have previously stated, however, the insurance company and the insured do not usually enter into their contract of insurance upon an altogether equal footing. The insurer produces its own contract, and

the insured is not consulted about its numerous and prolix terms and conditions, but is required to accept it or go without insurance. Hence the rule of the statute is without application in such a case. The other statutory rules cited by counsel merely state the ordinary canons of construction.

Reading the words "idle or inoperative" with reference to the context in which they are written, my strong impression is that they mean the closing down of the mill and plant, a cessation from the ordinary running thereof; not the usual shutting down for the night, or over Sunday, or a holiday, but an absolute termination of operations, so that the mill and plant are entirely idle both day and night, weekday and holiday, and remain so. It is then that "a constant day and night watchman shall be kept on duty." This rendition is manifest from the succeeding clause in the context, which reads:

"Provided that, if such property be idle or shut down for more than 30 days at any one time, notice must be given this company, and permission to remain idle for such time must be indorsed hereon."

The word "idle" is obviously used in the same sense in the former clause as in the latter, and the words "shut down" are synonymous with "inoperative." The former clause has in purview a time when the property may not be operated. It might be for a few days, or it might be more. In such an event there must be kept a day and night watchman. But if the cessation of operation continues for more than 30 days, as stipulated by the latter clause, the two clauses being correlated by the words "and provided," the policy is rendered void unless notice be given and permission obtained therefor. In further illustration, a person is not said to be idle when working 8 or 10 hours per day and employing the remaining 16 or 14 hours for rest and recreation. Nor is an aggregation of persons idle while pursuing the same sort of industry. A mill or plant is usually operated by an aggregation of persons, and if the manufactory, whatever it may be, is closed regularly at night or upon Sundays and holidays to permit of the usual recreation for the men, can it be said, with any greater show of reason, that the manufactory is idle or inoperative?

Many concerns, it is true, run day and night, attended by the workmen in shifts. But it is also true that very many of them shut down during the night, where the work is not of such a nature as to require night operation, and the workmen are allowed their Sundays and holidays. So that it may be presumed, when a mill is found to be shut down at night or upon Sunday or a holiday, that such is the custom of the management; yet the mill is not idle or inoperative in the sense that it has suspended operations, the men being laid off, and the concern an inanimate thing for the time being. There can be no question that the words "idle or shut down," used in the latter clause, mean an absolute and continuous cessation of operation, whch must be unbroken to render the policy a nullity. The property may remain idle or inoperative, or shut down, if you please, for any space of time less than 30 days without terminating the policy; but in the meanwhile there must be a constant day and night watchman kept on duty. All these words, "idle," "inoperative," and "shut down," are evidently em-

ployed in a synonymous sense, and ·do not have relation to the usual closing of the mill and plant for the night, or over Sunday or a holiday. Further than this it is unnecessary to go at present in the interpretation of this clause in the policy.

The interpretation is sustained by adjudications upon analogous provisions. I cite the authorities without comment, except to say that the first two were rendered upon a clause of distinct similarity to the one under discussion, and the third upon a clause in the exact language. Mackintosh v. Agricultural Fire Ins. Co., 150 Cal. 440, 89 Pac. 102, 119 Am. St. Rep. 234; Mackintosh v. American Fire Ins. Co., 150 Cal. 453, 89 Pac. 107; Central Montana Mines Co. v. Fireman's Fund Ins. Co., 92 Minn. 223, 99 N. W. 1120, 100 N. W. 3; P. Poss v. Western Assurance Co., 7 Lea (Tenn.) 704, 40 Am. Rep. 68; Waukau Milling Co. v. Citizens' Mut. Fire Ins. Co., 130 Wis. 47, 109 N. W. 937, 118 Am. St. Rep. 998; Rosencrans v. Insurance Co., 66 Mo. App. 352; City Planing & Shingle Mill Co. v. Insurance Co., 72 Mich. 654, 40 N. W. 777, 16 Am. St. Rep. 552; Brehm Lumber Co. v. Svea Ins. Co., 36 Wash. 520, 79 Pac. 34, 68 L. R. A. 109.

The finding will be for the plaintiffs, and judgment accordingly.