## GLOBE & RUTGERS FIRE INS. CO. v. KING FOONG SILK FILATURE.

(Circuit Court of Appeals, Ninth Circuit. March 21, 1927.)

No. 4896.

**1. Insurance �köæ146(3)—Policy is to be construed against insurer, and forfeitures avoided, if possible.**

Insurance policy is to be construed strictly against insurer, and, where reasonably possible, forfeitures are to be avoided.

**2. Insurance ⊦köæ328(2)—Transfer of warehouse receipt as collateral held not to defeat insurance under policy authorizing termination, if insured's interest passed.**

Transfer of warehouse receipt for insured property for collateral purposes, under which

title did not pass from insured, *held* not to terminate insurer's obligations, under policy providing for termination in case interest in property insured passed from the insured.

**3. Trial ☞60(2)—Offer to prove attempt to bribe adjuster held properly declined, in absence of proof of agency.**

Declining insurer's offer of proof as to a certain person attempting to bribe an adjuster *held* not erroneous, in absence of substantial proof of agency.

In Error to the United States Court for China; Milton D. Purdy, Judge.

Suit by the King Foong Silk Filature against the Globe & Rutgers Fire Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Fleming, Allman & Worthington, of Shanghai, China, and Garret W. McEnerney, and Andrew F. Burke, both of San Francisco, Cal., for plaintiff in error.

Chickering & Gregory and Blair S. Shuman, all of San Francisco, Cal., and George Sellett, of Shanghai, China, for defendant in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. On January 27, 1924, in Shanghai, China, a fire destroyed the Hsin Kong Godown, or warehouse, together with its contents. In it the plaintiffs, who were engaged in the silk filature business, had stored 115 piculs of cocoons, of a value in excess of Shanghai taels 25,000, and covered by three several policies of fire insurance, aggregating that amount, issued by the defendant, Globe & Rutgers Fire Insurance Company. Upon demand of the insurer, the question of the extent of the loss was submitted to arbitration, resulting in an award of the full amount of the policies. Thereafter it denied all liability, and plaintiffs brought this suit. Upon comprehensive findings of fact, the court gave the plaintiffs judgment, from which defendant brings error.

The principal defense below and here is predicated upon a clause in the policies which provides that, "if the interest in the property insured pass from the insured, otherwise than by will or operation of law, the insurance ceases to attach as regards such property. The material facts may be briefly stated:

Plaintiffs did business largely on credit, borrowing in the main, if not exclusively, from one Kuo, who was a friend of one of them and a relative of another. Kuo, in turn, borrowed part of the funds thus furnished from a local bank. His credit was such that the bank honored his overdrafts, but, in accordance with a banking practice, at the end of the year and shortly before the fire occurred, he was called upon to take up his overdraft, amounting at the time to approximately taels 20,000. The plaintiffs, being indebted to him for double that amount, turned over to him, without indorsement, the warehouse receipt they held covering the cocoons, together with the insurance policies, and he delivered them in the same condition together with his promissory note for substantially the amount of the overdraft to the bank. The bank held the papers at the time the fire occurred, but immediately thereafter returned them to the plaintiffs. The receipt contains a provision requiring the "chop" or indorsement of the plaintiffs as a condition to the transfer of the goods to a third person.

The validity of a delivery without indorsement is in controversy; but for the purposes of the case we assume, but do not decide, that it was effective for the use intended by the parties. Undoubtedly, we think, it was the understanding of the plaintiffs, of Kuo, and of the bank that the receipt was to be held as a pledge in the nature of collateral security. By a translation from Chinese into English of plaintiffs' written claim made after the fire occurred, defendant seeks to put them in the position of characterizing the transaction as one of mortgage, by which title was transferred; but the correctness of this translation is challenged by a competent witness for plaintiffs, and in view of all the circumstances we agree with the lower court that title to the property did not pass.

Arguing that, even if this view be taken, the transaction had the effect of qualifying and reducing the interest plaintiffs had in the insured property at the time the policies were written, the insurer contends that for that reason it operated to terminate the insurance. The position might be well taken were the clause under consideration as broad as are similar provisions frequently found in modern policies. But it will be noted that the language here does not provide for termination in case of *any* change of interest, or in case the insured ceases to be the sole and unconditional owner, or to have complete ownership, or to remain in exclusive possession. The provision is only that the insurance ceases in case "the interest in the property insured passes from the insured"; that is, as we in-

terpret the language, the entire interest. Undoubtedly, the plaintiffs had legal title to, and a very substantial interest in, the property at the time it was destroyed.

[1, 2] Under the familiar principles of insurance law, that a policy is to be construed strictly against the insurer, and that, where reasonably possible, forfeitures are to be avoided, we are of the opinion that the transfer for collateral purposes of the warehouse receipt did not operate to terminate the defendant's obligations. Royal Exchange Assurance v. Trower (D. C.) 240 F. 811; Mackintosh v. Agricultural Fire Ins. Co., 150 Cal. 440, 89 P. 102, 119 Am. St. Rep. 234.

In Joyce on Insurance, vol. 4, p. 3854, the learned author says:

"Many of the policies enumerate changes in title which will avoid them, while others contain stipulations against change of title framed in general terms of prohibition. In all cases where the policy contains a condition as to alienation, the exact language of such condition must be carefully examined, in order to ascertain the intent of the parties and their rights under the contract."

In Cooley's Briefs on the Law of Insurance, vol. 2, p. 1733, it is said:

"But a condition like this, which merely prohibits a sale or transfer in general terms, is to be distinguished from a clause which provides that a policy shall be void on any sale, transfer, or change of title in the property insured. A condition which prohibits a sale and conveyance in general terms is construed to require a transfer of the whole of insured's interest in order to vitiate the policy."

See, also, May on Insurance, vol. 1, p. 557; Phœnix Insurance Co. v. Lawrence, 4 Metc. (Ky.) 9, 81 Am. Dec. 521; Hitchcock v. Northwestern Insurance Co., 26 N. Y. 68; Gibb v. Fire Insurance Co., 59 Minn. 267, 61 N. W. 137, 50 Am. St. Rep. 405; Blackwell v. Miami Valley Ins. Co., 48 Ohio St. 533, 29 N. E. 278, 14 L. R. A. 431, 29 Am. St. Rep. 574; Marts v. Cumberland Ins. Co., 44 N. J. Law, 478; Cowan v. Iowa State Ins. Co., 40 Iowa, 551, 20 Am. Rep. 583; Com. Union Assur. Co. v. Scammon (Ill.) 12 N. E. 324.

[3] In view of our assumption that the mere delivery of the warehouse receipt was effective, certain of the assignments respecting exclusion of tendered testimony need not be discussed. There being no substantial proof of agency, it was not error to decline defendant's offer to prove that one Chong attempted to bribe an adjuster.

Judgment affirmed.