## THE ANDES INSURANCE COMPANY

### *v.*

### ELIAS SHIPMAN.

1. INSURANCE—*evidence to prove the property insured was a subject of litigation.* In a suit upon a policy of insurance of distillery property, where the application, which was made a part of the policy, contained a statement that the property had not been a subject of litigation since in present hands, the defendant, in cross-examining the plaintiff, asked the following questions: "State if you were present just previous to obtaining this insurance, when Crosby was attached for contempt of court in running this distillery?" "about how many times, in your knowledge, has this distillery been seized by the government?" which the court refused to allow: *Held,* no error, as the answers could not tend to show that the property had been in litigation since owned by the plaintiff, and the questions were not a proper cross-examination.

2. SAME—*performance of condition to keep a watchman.* Where permission was granted for closing distillery property, which was insured, for repairs, on condition a watchman should be kept on the premises, it was *held,* that it was of no consequence what particular part of the premises the watchman occupied. If he was about the premises in the discharge of his duty, even though occupying an office not insured, it was a substantial compliance with the contract.

3. SAME—*condition which the company did not expect to be performed.* Where an application for insurance contained a clause requiring a record to be kept of a watchman's performance of duty, which was prepared by the agents of the company insuring, and was signed by the assured without knowing its contents, on the assurance it was all right, and it appeared that such record could not be kept without a watch-clock, and that none was kept on the premises, and this fact was well known to the company's agents who made the contract, it was *held,* that, as the agents knew no such record could be kept when they made the contract, the company could not shield itself from the payment of a loss on the ground that no such record was kept.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. ROWELL & HAMILTON, for the plaintiff in error.

Messrs. BLOOMFIELD & LUCAS, for the defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court :

This was an action of assumpsit, brought by Elias Ship-
man, in the circuit court of McLean county, against the Andes
Insurance Company, to recover on a policy of insurance, for
the destruction of the insured property by fire, which occurred
about two o'clock in the morning, October 2d, 1872.

A trial was had before a jury, which resulted in a verdict
in favor of the plaintiff for $10,825. The court overruled a
motion for a new trial, and rendered judgment upon the ver-
dict.

The defendant has brought the record here, and insists
that a watchman kept at the office on the distillery grounds
was not a compliance with the contract; that the watchman
was required to keep a record ; that Shipman made misrepre-
sentations in procuring the policy, and that the court improp-
erly excluded certain evidence.

The policy was issued on the 28th day of June, 1872, for
two years, the amount of insurance $10,000, distributed as
follows : $2400 on three-story brick distillery building. $240
on one-story frame fermenting building. $120 on one-story
frame boiler house, $400 on fixed and movable machinery and
apparatus used in the manufacture of highwines, $920 on fer-
menting tubs. $1120 on four boilers, $1200 on steam engine
belonging to Elias Shipman, and all contained in the building
situated on the south side of the Peoria road and on east
bank of Sugar creek, Bloomington, Illinois.

A stipulation was written on the face of the policy, as fol-
lows: " Permission is given for said distillery to be closed
for repairs on machinery, and for new machinery to be put in ;
a watchman to be on the premises constantly during the time
till September 1st, 1872." Also, "August 30, 1872, the time
for repairs extended to Oct. 15, 1872, under same conditions."

The application, which, by the terms of the policy, is made
a part thereof, contains the statement that the property has
not been a subject of litigation since in present hands.

The defendant, upon cross-examination of the plaintiff, asked the following questions:

"State if you were present just previous to obtaining this insurance, when Crosby was attached for contempt of court in running this distillery?"

"About how many times. in your knowledge, has this distillery been seized by the government?"

The court refused to allow the questions to be answered, and this decision is relied upon as error.

It is not apparent in what manner an answer to either of the questions would have tended to establish the fact that the insured property had been in litigation since owned by the plaintiff. Crosby may have been attached for contempt, and yet the distillery property remained free from litigation. It may also be true, that, at some time, the property may have been seized by the government when held by a prior owner, but such fact. if it existed, would not show litigation in regard to the property while owned by the plaintiff, as it may have been seized and no litigation followed. It was, however, a sufficient objection to the evidence, that it was not a proper cross-examination of the witness.

Had the defendant desired the evidence in defense, or desired to preserve the question as to its admissibility, the evidence should have been offered when the defendant was introducing its testimony in defense of the action.

It is, however, insisted that no watchman was upon the insured premises at the time the fire occurred, and on that account the plaintiff was not entitled to recover.

It appears, from the evidence, that the distillery premises consisted of the distillery, the bonded warehouse, scales, corn crib, cooper shop, two tenement houses, an office 179 feet from the distillery, where all grain was purchased, the books kept, and the business connected with the distillery transacted. This office was not included in the policy, but it was known, used and recognized as a part of the distillery property.

The plaintiff had a day watchman and a night watchman employed, who seem to have been faithful and entirely trustworthy. The night watchman usually occupied the office. On the night the fire occurred, he was around the premises until about 11 o'clock, when he went into the office and went to sleep. Between 1 and 2 o'clock he discovered the property was on fire.

The question is, was this a substantial compliance on the part of the plaintiff with the terms of the contract, which required a watchman to be on the premises?

The defendant claims that the language used required the watchman to be on the premises actually insured.

It will be seen, by reference to the policy, that, in describing the property insured, it is designated as all contained in the said buildings, but in providing for a watchman, the language employed is different. The word "buildings" is not used. The clause is as follows: "Permission is given for said distillery to be closed, a watchman to be on the premises."

It is apparent that, when the word "distillery" was used, it was intended to embrace all the distillery property, and the provision that a watchman should be on the premises, did not mean that he should be located in any particular building, but that he should be upon the distillery premises.

The land used and occupied by the distillery constituted one acre. We can see no reason why the watchman could not protect the property from fire as well by being on one part of the premises as another.

It was a matter of no consequence what particular part of the premises the watchman occupied; if he was about the premises in the discharge of his duty, such was a substantial compliance with the contract.

It is, however, claimed that the contract of insurance required a record to be kept of the watchman's performance of duty, which was not done by the plaintiff.

The evidence shows that the application, which contains this clause, was prepared by the agents of the defendant, and it was signed by the plaintiff, without knowing its contents, on the representation of the agent who drafted it, that it was all right.

It also appears that no watch-clock was kept in the distillery, and this fact was well known to defendant's agent, who made the contract for insurance. It was also proven that no record could be kept of the watchman's performance of duty, without a watch-clock; that the term used in the application, is a common term, recognized and known among insurance men.

When the defendant received of plaintiff the premium and issued the policy, with full knowledge that no record could be kept of the watchman's performance of duty, after a loss has occurred the company can not be permitted to shield itself from payment of the loss on a pretext so trivial. *Com. Ins. Co.* v. *Spankneble*, 52 Ill. 55.

The instructions given to the jury by the court were in harmony with the views here expressed, and were substantially correct.

The property destroyed was worth about three times the amount of the policy. No blame seems to be attributable to the plaintiff, and, upon a careful examination of the whole record, we perceive no substantial reason for disturbing the judgment. It will therefore be affirmed.

*Judgment affirmed.*