McGANNON v. MILLERS' NATIONAL INSURANCE COMPANY OF ILLINOIS, Appellant.

Division One, December 24, 1902.

1. 'Insurance: WATCHMAN: WARRANTY: CONSTRUCTION. A clause in an insurance policy to keep a watchman on the premises at all times when the machinery is not in operation, and warranting "the statements and facts" therein to be true, is not to be so harshly construed as to mean that unless the watchman is kept there at every minute the mill is not in operation the policy is nullified, but is a condition subsequent, and must not be so construed as to effect a result which the parties can not be reasonably presumed under all the circumstances to have intended.

2. ——: ——: ——: MEANING: NEGLECT OF WATCHMAN. Under a contract of insurance the assured agreed to keep a watchman on the premises at all times when the machinery was not in operation. Held, that he did not thereby agree that the watchman would never neglect his duty. .

3. ——: ——: ——: CASE STATED. In fulfillment of a contract of insurance to keep a watchman on the mill premises at all times when the machinery was not in operation, the assured employed two experienced and competent men and for a long time before the fire occurred they had been in this service and had faithfully discharged the duties for which they were employed, but one of them, whose watch ended at midnight, left about ten o'clock without the knowledge or consent of the insured, and while he was absent the fire occurred. Held, that this was no such negligence on the part of the insured, nor any such breach of the contract, as would defeat a recovery on the policy.

4. Practice: MOTION IN ARREST: PREMATURE ACTION. A motion in arrest of judgment reaches only a defect in the record proper. Evidence of fact de hors the record will not support the motion. Consequently in a suit on an insurance policy, if it does not appear from

the pleadings that defendant was given by the policy sixty days in which to make payment after proof of loss, but that fact comes out only in the evidence, appellant can not on appeal raise the point that the cause was prematurely brought.

Appeal from Lawrence Circuit Court.—*Hon. H. C. Pepper*, Judge.

AFFIRMED.

*Henry Brumback* and *R. W. Barger* for appellant.

(1) Appellant claimed and now claims that the application was a promissory warranty. When the fire occurred the warranty was broken and the policy at that time, by reason of the breach of warranty, was suspended and inoperative when the fire occurred. 1 May in Insurance (3 Ed.), sec. 156; 1 Biddle on Insurance, secs. 543, 557; Brooks v. Ins. Co., 11 Mo. App. 349; Glendale Woolen Co. v. Ins. Co., 21 Conn. 19; Bank v. Ins. Co., 50 N. Y. 45; Ripley v. Ins. Co., 30 N. Y. 136; Blumer v. Ins. Co., 45 Wis. 622, 7 Ins. Law J. 833; Houghton v. Ins. Co., 8 Met. 114; Worcester v. Ins. Co., 9 Gray 27; Mining Co. v. Ins. Co., 67 Cal. 27, 14 Ins. Law J. 625; Sheldon v. Ins. Co., 22 Conn. 235; McKenzie v. Ins. Co., 112 Cal. 548, 25 Ins. Law J. 561; Hoose v. Ins. Co., 84 Mich. 317; Ins Co., v. Gilbert, 27 Mich. 433; Loehner v. Ins. Co., 17 Mo. 247; Holloway v. Ins. Co., 48 Mo. 1; Mers v. Ins. Co., 68 Mo. 131; Maddox v. Ins. Co., 56 Mo. App. 343. (2) The court erred in overruling and not sustaining the motion of appellant in arrest of judgment. In 4 Enc. of Pleading and Practice, 641, it is said : "So in an action upon an insurance policy providing that a loss shall not be payable until a certain time after notice and proof of the same, the complaint must show that the action was not commenced until the lapse of the specified time after the notice and proofs were furnished." Lanford v. Sander, 40 Mo. 160. A failure to state facts constituting a cause of action is as fatal at any stage as though the court had no jurisdiction. Burdsall v. Davies, 58 Mo. 138. Verdict will

cure formal defects, but not substantive ones. Salisbury v. Rixon, 50 Mo. 142. Wherever a general demurrer will lie, a motion in arrest is equally available. Hart v. Harrison Wine Co., 91 Mo. 414. A motion in arrest will lie even though party fail to demur. Sims v. Steamboat Indiana, 28 Mo. 335; Pearson v. Ins. Co., 26 Ins. L. J. 176; Cowen v. Ins. Co. (Cal.), 19 Ins. L. J. 443.

*W. D. Tatlow* for respondent.

(1) Warranties are not favored in insurance policies, and it is a familiar rule of construction that a promise in regard to the future, which is not clearly made a warranty, is a representation only, and not a warranty. Houghton v. Ins. Co., 8 Metc. 114; Daniels v. Ins. Co., 12 Cush. 416; Bank v. Ins. Co., 95 U. S. 673; Garcelon v. Ins. Co., 50 Me. 580; King Brick Mfg. Co. v. Ins. Co. (Mass.), 41 N. E. 277. (2) Forfeitures in insurance policies are not favored, and conditions which effect such forfeitures should be strongly construed against the company, so as to avoid a forfeiture. McFarland v. Ins. Co., 124 Mo. 217; McCullum v. Ins. Co., 61 Mo. App. 352; Shell v. Ins. Co., 60 Mo. App. 644; 2 May on Ins. (3 Ed.), sec. 367; Ins. Co. v. Jeary, 83 N. W. 78. (3) The law is now well settled in this State and elsewhere that the negligence of the assured, its agents or servants, not amounting to fraud or a willful burning of the premises, is a risk covered by the policy of insurance. This is expressly admitted by counsel for appellant. Ins. Co. v. Glasgow, 8 Mo. 713; Shaw v. Robberds, 6 Adol. & M. 75; Dobson v. Southeley, Moody & M. 90; Daniels v. Ins. Co., 12 Cush. 416; Houghton v. Ins. Co., 8 Metc. 114; Laud v. Ins. Co., 2 Gray 221; Ins. Co. v. McDowell, 50 Ill. 120; Ins. Co. v. Eddy, 55 Ill. 213; Miekey v. Ins. Co., 35 Iowa 174; King Brick Mfg. Co. v. Ins. Co., supra. (4) In the policy sued upon in this case, it is expressly provided that the policy shall be void for any one of seventeen different reasons. It also provides the com-

pany shall not be liable for loss occasioned by invasion, or from loss resulting from a number of other causes, but nowhere provides the policy shall be void if a competent watchman is hired by the insured, and is temporarily absent from his post, or if one or more of the buckets to each cask of salt water should be temporarily removed. If it had been intended to avoid the policy for these reasons, it would not have been difficult to say so. In the absence of such provisions for a forfeiture none will be declared by the court. McGannon v. Ins. Co. (Mich.), 87 N. W. 65. (5) If the watchman clause could by any possibility be given the construction contended for by appellant, then it would fall within the exact language of the statute, that it shall "be deemed, held and construed as a representation only." For, under that construction the clause required only two things, viz.: He must have been called a watchman and he must have been on the premises at all times when the machinery was not in operation. His qualifications were wholly immaterial; to use their language, it made no difference what kind of a watchman he was, "good, bad or indifferent," so he was on the premises at all times when the machinery was not in operation. Hence, if the assured had kept a six-year-old boy as a watchman and he was there at all times when the machinery was not in operation, this would have been a full compliance. So construed it would not have been any more "material to the risks insured against" than if the assured had agreed to keep a black cat on the premises at all times when the machinery was not in operation. The statute was made to cover just such cases, if this is the proper construction of the clause. Secs. 7973-7974, R. S. 1899. (6) Neither the watchman clause contained in this policy, nor any other that has been before the courts, has been found sufficiently plain, full and complete within itself as to leave nothing to intendment or inference as to the duty of the assured thereunder, and so as to permit or require such strict and literal construction and compliance as to defeat a recovery under the facts of

this case, but on the contrary the assured has recovered in a number of such cases, where the facts are identical with the facts in the case at bar.   Watchman clause: Hanover v. Gustin (Neb.), 59 N. W. 375; Ins. Co. v. Metcalf (Kan.), 53 Pac. 68; Ins. Co. v. Coffman, 32 S. W. 810; Sierra M. S. & M. Co. v. Ins. Co., 18 Pac. 267; Ins. Co. v. Gerteson (Ky.), 51 S. W. 617; Crocker v. Ins. Co., 8 Cush. 79; Ins. Co. v. Coffman, 35 S. W. 406; King Brick Mfg. Co. v. Ins. Co., supra; Ins. Co. v. Glasgow, 8 Mo. 713; Ranklin v. Ins. Co., 89 Cal. 203, 26 Pac. 872; Sable Lumber Co. v. Ins. Co., 50 N. W. 870; Spies v. Ins. Co., 97 Mich. 310; Power v. Ins. Co., 8 Phila. 556; Houghton v. Ins. Co., 8 Met. 114; Wooster v. Ins. Co., 9 Gray 27; McGannon v. Ins. Co., (Mich.), 87 N. W. 63 (this loss); 13 Am. and Eng. Ency. of Law (New Ed.), p. 248.   Iron safe clause: Ins. Co. v. Kearney (C. C. A.), 94 Fed. 314; McNutt v. Ins. Co., 45 S. W. 61; Ins. Co. v. Kearny, 46 S. W. 414; Brower v. Ins. Co., 35 S. W. 1060; Ins. Co. v. Pearlstone, 45 S. W. 833; Ins. Co. v. Redding (C. C. A.), 68 Fed. 708; I. Phillips on Ins., sec. 872.   Prohibited articles:   La Force v. Ins. Co., 43 Mo. App. 518; Barnard v. Ins. Co., 27 Mo. App. 35; Fink v. Ins. Co., 60 Mo. App. 679.

VALLIANT, J.—This is a suit on a fire insurance machinery, etc., constituting a flouring mill. . In the written application for the policy which the insured signed was this question and answer: ''Do you agree to keep a watchman on the premises at all times when the machinery is not in operation? ' Yes.''

In addition to the question and answer quoted, the application contained statements as to the character and condition of the property, the title, etc., and at the conclusion was this: ''And the undersigned applicant hereby warrants that the above is a just, full and true exposition of the facts and circumstances in regard to the property to be insured, and it shall be considered as the basis on which insurance is to be affected and continued in force, and the same is under-policy.   The property insured was a building with

stood as incorporated in and forming a part and parcel of the policy as a continuing warranty during the life of such policy.''

The answer pleads these terms of the contract and avers that at the time of the fire the machinery was not in operation and there was not a watchman on the premises.

The reply is to the effect that the insured, in compliance with the terms of the contract, did employ two men, Bell Taylor and J. N. Robinson, to stay on the premises as watchmen when the machinery was not in operation, Taylor to be on watch from twelve o'clock midnight to six o'clock in the morning, and Robinson from six in the morning until midnight; that they were competent and efficient men for the purpose, and agreed with the assured to faithfully perform the duty appertaining to the position, and that they did so; that when the fire occurred the machinery was not in operation, having closed down for the night; that Robinson, whose watch it was, was on the premises until fifteen minutes past ten o'clock at night, at which time he went over the mill and carefully examined everything and then went to his home, to which he was called because of the sickness of his wife; that the fire occurred shortly before midnight, just before Taylor's watch was to begin; that Robinson left before his watch expired without the knowledge or consent of the assured, and in violation of his agreement with assured, and in contravention to his duty as watchman.

On the trial the plaintiff was permitted, over the objection of defendant, to prove the facts pleaded in the reply. The cause was tried by the court, jury waived. The instructions given and refused show that the court adopted the theory that the facts pleaded in the reply amounted to a compliance by the insured with the terms of the contract in reference to keeping a watchman. There was a finding and judgment for the plaintiff for $7,015, and defendant appeals.

Two points were urged in the trial court and the same are urged here in defense of the action: First,

that the obligation to keep a watchman while the machinery was not in operation was a warranty on which the continuing of the contract of insurance depended, and the absence of the watchman at the time the fire occurred, the machinery then not being in operation, was a breach of the warranty, which relieved the defendant from the contract of insurance; second, that the petition fails to show that the debt was mature when the suit was begun.

I.   The defendant is in the attitude of demanding the strictest construction of its contract.   It combats the argument of the plaintiff that the agreement to keep a watchman should be given a reasonable construction and it insists on the letter.  The plaintiff says when we agreed to keep a watchman it was understood to mean that we would in good faith do all that reasonable, prudent men engaged in that kind of business would do to see that a watchman was on duty to guard the property when the machinery was not in operation and that we have done.   But the defendant says there is no room for construction; the contract requires a watchman to be in the place, and you warrant that he will be there every minute while the machinery is not in operation, and the obligation on our part to insure is ended when your watchman leaves his post, for a long or a short period, with or without your knowledge or consent.   Parties may contract with each other to that effect, and courts will hold them to the contract regardless of the consequences, but courts will not give to a contract such a harsh construction unless it is clear that it was so intended.   Appellant itself is in no condition to invoke so strict a construction.   If we should apply to the terms used in the application and the policy the strict rules of construction the appellant demands, there is room to question if the language used in reference to keeping a watchman is covered by the warranty clause at all.   The question in the application is: "Do you agree to keep a watchman on the premises at all times when the machinery is not in operation?"   The answer is, "Yes."   Now if that is all

there is in the contract it amounts to nothing more than a collateral agreement, for the breach of which the insured would be liable to respond in damages. But appellant insists that the concluding clause in the application converted the agreement into a continuing or running warranty upon which the continuing of the contract of insurance depended. The language relied on is: "And the undersigned applicant hereby warrants that the above is a just, full and true exposition of the facts and circumstances in regard to the property to be insured, and is and shall be considered as the basis on which insurance is to be effected and continued in force and the same is understood as incorporated in and forming a part and parcel of the policy, as a continuing warranty during the life of the policy." There are in the application statements of "facts and circumstances in regard to the property," for example, as to title, occupancy, use, incumbrance, etc., as to which this clause is a warranty that they are "a just, full and true exposition of the facts and circumstances,'" but can it be said under the strict rules which appellant invokes that the promise to keep a watchman, which, in the form used, is a promise to do something in the future, is an exposition of a fact or a circumstance? It might be construed to mean that in the course of its business, at and prior to the application, the insured habitually kept a watchman on duty when the machinery was not in operation, and if so, that would be a circumstance or condition in regard to the property, and it would probably carry by implication the understanding that that condition would be maintained during the life of the policy. But that would be giving the contract a liberal construction to effectuate what would be considered the reasonable intention of the parties as ascertained from all the circumstances; it would not be the construction we would be compelled to put on it if we should follow the strict rules demanded by appellant. In some of the cases referred to in the briefs the form of the question is: "Watchman. Is one kept on the premises during the night and at all

times when the works are not in operation or when workmen are not present?'' In that form the question calls for information as to the manner in which the applicant has been in the habit in the past of conducting his business (which to an insurer is a point of some importance), as well as implying how it will be continued. We are unwilling, however, to attach much importance to the form of this question, which in one form or another is frequent in such contracts, or to give it a significance in the one form that it does not have in the other, but we have drawn attention to it in this manner to show the danger of sticking too closely to the letter in such case.

The most favorable construction that can be put on the watchman clause in this contract is that the obligation on the part of the insured to keep a watchman when the machinery is not in operation, is a condition subsequent, the breach of which would release the insurance. But the obligation must not be so strictly construed as to effect a result that the parties can not be reasonably presumed under all the circumstances of the case to have intended. In construing it we must be careful on the one hand not to read into it a condition inconsistent with its natural purport, and on the other not to interpret it so as to give to the letter a force that will defeat the evident intention of the parties. The insured agreed to keep a watchman on the premises at all times when the machinery was not in operation. As in fulfillment of this agreement he employed two men for that purpose—competent, experienced and efficient men. Up to the time the fire occurred these men had been in this service for a long time and had faithfully discharged the duties for which they were employed. One of them, whose watch it was on the night in question, left his post after ten o'clock and the fire occurred before the other man, whose watch began at twelve, came on duty. The watchman who left his post says he did so because his wife was sick and needed his attention, but we are not concerned with his excuse; the result would be the same if he had no

excuse. He left without the knowledge or consent of the insured. Under the contract in question, did the insured warrant that the watchman would never neglect his duty? It is no defense to a suit on a fire policy that the fire resulted from the negligence of the insured. Negligence or carelessness is one of the risks insured against, and negligence of the watchman is in fact all that can be made out of this point.

In the able and thorough brief of appellant's counsel we are cited to many authorities which it is claimed sustain appellant's view of this contract. But without reviewing them all we will say that we do not understand the Missouri decisions referred to as so holding.

In Brooks v. Ins. Co., 11 Mo. App. 349, the contract was: "Warranted by the insured that there shall be a watchman kept on the premises at night and on Sundays." The evidence showed that the assured employed no one to watch the mill at night. It was not in that case as in this, a mere temporary absence or a neglect of duty on the part of the watchman, but the insured had failed to employ a watchman for that interval as he had agreed to do.

In Loehner v. Ins. Co., 17 Mo. 247, it was decided that a representation in the application to the effect that there was no incumbrance on the property was a warranty of the truth of that statement and that parol evidence to the effect that the insured told the agent that there was an incumbrance was inadmissible. But there is nothing in that case on the point now under discussion. The parol evidence introduced in this case was not intended to vary the written contract, but was to show that the insured had in fact done what it agreed to do. Nor do we find anything in Mers v. Ins. Co., 68 Mo. 131, bearing on the question. These are the Missouri cases relied on.

The precise question we now have was before the Supreme Court of Nebraska in Hanover Fire Ins. Co. v. Gustin, 40 Neb. 828. The contract required the insured to keep a watchman on the premises during the night and at all times when the works are not in opera-

tion or when the workmen are not present.   A watchman was employed for this purpose and usually was in attendance but on the evening in question about six o'clock he left the premises for some matter of his own and about 7:30 o'clock was returning when he discovered the mill on fire.   That court was of the opinion that the contract should receive a reasonable construction and that when the assured had employed the watchman and exercised the care that a prudent man in such circumstances would exercise to see that the watchman performed his duty, it was a substantial compliance with the contract.   This view is also supported by the following decisions:   Ins. Co. v. Metcalf, 59 Kas. 383; Ins. Co. v. Coffman (Tex), 32 S. W. 810; Burlington Ins. Co. v. Coffman, 35 S. W. 406; London, etc., Ins. Co. v. Gerteson (Ky.), 51 S. W. 617; and other cases cited in the brief of respondent.

A suit growing out of this loss on another policy covering this property, in which a like clause as to a watchman was contained came before the Supreme Court of Michigan (McGannon v. Fire Ins. Co., 127 Mich. 636), and that court in an able opinion by MOORE, J., entered into an elaborate review of the authorities and reached the conclusion that the insured had complied with its part of the agreement when it did everything that a prudent business man under like circumstances would have done, aiming in good faith to comply with the terms of the contract.   The court in that case quote from a Massachusetts case (King Brick Mfg. Co. v. Royal Ins. Co., 164 Mass. 291), in which, as to a similar clause in the policy, it was said:  "The duty was thus imposed upon the insured to use all reasonable care, and to take all reasonable means to see that a constant watch was kept.   This was done by making a rule to that effect, and providing a watch.   No negligence or fraud is implied to the assured.   The loss was caused by the negligence of a servant, and this is a risk covered by the insurance."   That is the theory on which the learned circuit judge tried this cause, and we think it is the true theory.

II.   The second point advanced by appellant is
that the petition does not on its face show that the claim
had matured when the suit was commenced.   The point
is thus stated by the learned counsel in their brief:
"We are not now saying as a fact, aside from the aver-
ments of the petition, that the claim of the plaintiff
was not mature when the suit was brought, but we are
saying that the averments on the face of the petition
do not show that the cause of action was then mature.
We might have demurred, of course, for this cause, but
because it was a substantive and not merely a formal
defect, we preferred to wait until other means of de-
feating an improper claim were exhausted, and then,
if necessary, move in arrest when the defect might be
availed of to some advantage."

The contract gave the insurance company sixty
days after proof of loss in which to make payment; and
the petition did not state that proof of loss was fur-
nished the company sixty days before suit was begun.
It does not appear from the pleadings, either petition
answer or reply, that defendant was entitled to sixty
days after proof of loss in which to make payment;
that is a fact which comes out only in the evidence.   A
motion in arrest of judgment reaches only a defect in
the record proper.   Such defect must appear on the
face of the record; if it does not so appear, evidence of
a fact *dehors* the record can not support the motion.
For aught that appears on the face of this record, the
plaintiff's cause of action had matured when the suit
was begun.

The petition avers that the plaintiff had performed
all the conditions of the contract on his part and had
become entitled to recover the entire loss under the
policy.   That was a sufficient averment under our
statute, section 634, Revised Statutes 1899.

The proof of loss was in evidence and the fact ap-
peared that it was furnished more than sixty days be-
fore the suit was begun.   Appellant concedes in its
brief that the fact is that the suit was begun after the
sixty days grace had expired.   If there was error in

overruling the motion in arrest we could not, under the conceded fact in the case, reverse the judgment on that account in the face of the statute, section ·865, Revised Statutes 1899, because it is not an error materially affecting the merits of the action.

We find no error in the record and the judgment· is affirmed.   All concur.