# Axe, Appellant, *v.* Fidelity & Casualty Company of New York.

*Insurance—Burglary insurance—Covenants of policy—Premises —Watchman.*

1. A policy of burglary insurance indemnified the insured for loss by burglary "from the store or rooms actually occupied by the assured and described in the said schedule (hereinafter called the premises)." In the schedule were the following statements: "The premises occupied by the assured are as follows: Fourth floor." "Location of building: 1023-25-27 Race street, Philadelphia, Pennsylvania." "No other business than that of the assured is carried on within the premises, except as follows: No exceptions." *Held,* that the word "premises" meant the store or rooms actually occupied by the assured, which was the fourth floor of the building, and not the entire building.

2. Where such a policy stipulates that a private watchman "is employed within the premises when not open for the transaction of business," and that such service should "be continued during the currency of this policy," the insured is not entitled to recover if it appears that he did not employ a watchman as agreed. The fact that the owner of the building employed a watchman for the building is immaterial, especially where it appears that such watchman did not have the keys to the doors entering the fourth floor, and was not on duty at the time the burglary took place.

Argued January 16, 1913. Appeal, No. 264, Jan. T., 1912, by plaintiff, from judgment of C. P. No. 4, Philadelphia Co., June T., 1910, No. 5637, for defendant non obstante veredicto in case of Burney Axe, trading as B. Axe & Company, v. Fidelity & Casualty Company of New York. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

570 AXE, Appellant, v. FIDELITY & CASUALTY CO.

Assumpsit on a policy of burglary insurance. Before WILLSON, P. J.

The facts are stated in the opinion of the Supreme Court.

At the trial the jury returned a verdict for the plaintiff for $2,105. Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Julius C. Levi,* with him *David Mandel, Jr.,* for appellant.—The word "premises," as used in the contract sued upon, means, in its relation to the provision for a watchman, not the fourth floor of the building mentioned in the policy, but the building itself: Bole v. Fire Ins. Co., 159 Pa. 53; Watertown Fire Ins. Co. v. Simons, 96 Pa. 520; Grandin v. Rochester German Ins. Co., 107 Pa. 26; Reynolds v. Maryland Casualty Co., 30 Pa. Superior Ct. 456; Smith v. Ins. Co., 103 Pa. 177; Frick v. Ins. Co., 218 Pa. 409; Meadowcraft v. Ins. Co., 61 Pa. 91; Carpenter v. Ins. Co., 156 Pa. 37; Cummins v. Ins. Co., 192 Pa. 359; Bankers' Mut. Casualty Co. v. State Bank of Goffs, 150 Fed. Repr. 78; Thompson v. Ins. Co., 136 U. S. 287 (10 Sup. Ct. Repr. 1019).

The word "employed," as used in the contract sued upon, in the provision that a private watchman be employed, does not mean that every minute during the whole time there must be somebody there.

The word "watchman," as used in the contract sued upon, does not mean one personally present at the premises at all times, but does mean a person engaged in guarding the premises with the care usually exercised in fulfilling the duties of one looking after premises of the character specified in the policy: King Brick Mfg. Co. v. Ins. Co., 164 Mass. 291 (41 N. E. Repr. 277); McGannon v. Ins. Co., 171 Mo. 143 (71 S. W. Repr.

160) ; Hanover Fire Ins. Co. v. Gustin, 40 Neb. 828 (59 N. W. Repr. 375).

*William G. Wright,* for appellee.—The statements in the schedule are warranties, express and promissory. A breach of any one will prevent a recovery: Lycoming Ins. Co. v. Mitchell, 48 Pa. 367; Ripley v. Ins. Co., 30 N. Y. 136; Sheldon v. Ins. Co., 22 Conn. 235; Blumer v. Ins. Co., 45 Wis. 622; Pottsville Mutual Fire Ins. Co. v. Fromm, 100 Pa. 347; Wall v. Royal Society of Good Fellows, 179 Pa. 355; March v. Metropolitan Life Ins. Co., 186 Pa. 629; Murphy v. Prudential Ins. Co., 205 Pa. 444; Lennox v. Greenwich Ins. Co., 9 Pa. Superior Ct. 171; Stewart v. General Accd. Ins. Co., 35 Pa. Superior Ct. 120; Kensington National Bank v. Yerkes, 86 Pa. 227.

The word "premises" in the policy means "the store or rooms actually occupied by the assured"; which was the "fourth floor" of the building. The failure to employ a watchman therein voided the policy: Allemania Fire Ins. Co. v. Pittsburgh Exposition Society, 11 Atl. Repr. 572; Sexton v. Ins. Co., 69 Iowa 99 (28 N. W. Repr. 462) ; Thomas v. Hartford Fire Ins. Co., 53 S. W. Repr. 297; Rau v. Ins. Co., 36 N. Y. App. Div. 179 (55 N. Y. Supp. 459) ; Carlin v. Assurance Co., 57 Md. 515; Meadowcraft v. Ins. Co., 61 Pa. 91; Carpenter v. Ins. Co., 156 Pa. 37; Northwestern Mutual Life Ins. Co. v. Germania Fire Ins. Co., 40 Wis. 446; LaForce v. Williams City Fire Ins. Co., 43 Mo. App. 518; Firemen's Fund Ins. Co. v. Shearman, 20 Tex. Civil App., 343 (50 S. W. Repr. 598).

The requirement that a watchman be within the premises when not open for the transaction of business was not complied with by employing a watchman to spend half his time in the building, and half his time in another building two squares distant. It was further broken by discontinuing this service and substituting a man who was absent from midnight till 5 a. m.: Glen-

dale Woolen Co. v. Ins. Co., 21 Conn. 19; Sheldon v. Ins. Co., 22 Conn. 235; Ripley v. Ins. Co., 30 N. Y. 136; First Nat. Bank v. Ins. Co. of N. A., 50 N. Y. 45; Rankin v. Ins. Co., 89 Cal. 203 (26 Pac. Repr. 872); Books v. Fire Ins. Co., 11 Mo. App. 349; Blumer v. Ins. Co., 45 Wis. 622; Whealton Packing Co. v. Ætna Ins. Co., 185 Fed. Repr. 108; Snyder v. Home Ins. Co., 133 Fed. Repr. 848 (affirmed 148 Fed. Repr. 1021); Manheim Ins. Co. v. Tyner, 142 Ky. 22; Shoshone Concentrating Co. v. Hamburg-Bremen Fire Ins. Co., 64 Wash. 638; McKenzie v. Scottish Union & Natl. Ins. Co., 112 Cal. 548 (44 Pac. Repr. 922); Hanover Fire Ins. Co. v. Gustin, 40 Neb. 828 (59 N. W. Repr. 375); McGannon v. Ins. Co., 171 Mo. 143 (71 S. W. Repr. 160); King Brick Mfg. Co. v. Ins. Co., 164 Mass. 291 (41 N. E. Repr. 277); City Fire Ins. Co. v. Power, 21 Pitts. Leg. J. 70.

The absence of the watchman from midnight until 5 a. m. was a material change of the conditions and circumstances of the risk: Snyder v. Ins. Co., 133 Fed. Repr. 848; Manheim Ins. Co. v. Tyner, 142 Ky. 22; Ripley v. Ins. Co., 30 N. Y. 136; Blumer v. Ins. Co., 45 Wis. 622; Lutz v. Metropolitan Life Ins. Co., 186 Pa. 527; March v. Metropolitan Life Ins. Co., 186 Pa. 629; Murphy v. Prudential Ins. Co., 205 Pa. 444.

· OPINION BY MR. JUSTICE MESTREZAT, March 17, 1913:

This is an action of assumpsit on a burglary insurance policy issued by the defendant company to the plaintiff to insure him to the extent of $2,000 against direct loss by burglary of merchandise between April 29, 1910, and April 29, 1911, occasioned by its felonious abstraction from the premises occupied by him in the building known as 1023, 1025 and 1027 Race street, in the City of Philadelphia. The case was submitted to the jury and a verdict was returned for the plaintiff. On motion of counsel the court below entered judgment for the defendant non obstante veredicto. The plaintiff has taken this appeal.

The first clause of the policy provides that "in consideration of $50 premium and of the statements in the schedule hereinafter contained, which statements the assured makes on the acceptance of this policy and warrants to be true," the company agrees to insure him against direct loss by burglary of merchandise occasioned by its abstraction "from the store or rooms actually occupied by the assured and described in the said schedule (hereinafter called the premises)." Clause C of the "special agreements" provides that "the company shall not be liable......for loss or damage if the premises are occupied for any other purpose than that stated in the schedule." The "schedule" consists of a series of questions propounded by the company with answers by the assured. Those material to the present issue are as follows: "2. Location of building. 1023-25-27 Race street, Philadelphia, Pennsylvania. 3. The premises occupied by the assured are as follows: Fourth floor. 4. The business carried on by the assured in the said premises is: Manufacturing shirt waists and ladies' skirts. 5. No other business than that of the assured is carried on within the premises, except as follows: No exceptions......7. A private watchman is employed within the premises when not open for the transaction of business: Yes; Fox police lock......10. The service declared under each of the above heads (7, 8, 9) will be continued during the currency of this policy: Yes."

Clause 8 of the "general agreements" provides: "This policy shall be void if the conditions or circumstances of the risk are materially changed without the written consent of the company or if the assured attempts in any way to defraud the company or if the policy is assigned without the written consent of the company."

The facts are undisputed. The plaintiff is a manufacturer of shirt waists and ladies' skirts, and carries on the business on the fourth floor of the six-story building used for various purposes at 1023-25-27 Race street, in the City of Philadelphia. The

owner of the building employed a watchman to take care of this and another building at 1012 Race street. The watchman had been made assistant engineer the week before the burglary, and the chief engineer did whatever watching was done on the premises during the whole week in which the burglary occurred. The plaintiff did not employ any watchman, and had no personal knowledge of the temporary arrangement made by the owner of the building for the services of a watchman during the week the burglary was committed. The engineer undertook to perform the duties of watchman while taking steps to get another watchman. On the night of the burglary he examined the premises and saw that all the doors were locked and that the bottom step of the fire escape was pulled up. He did not go into the plaintiff's rooms as the watchman never had keys to enter them. The plaintiff's rooms were entered by the door leading out therefrom to the fire escape between midnight on May 12, 1910, and 5 o'clock of the morning of May 13, 1910, and merchandise to the value of more than twenty-three hundred dollars was taken therefrom. This action was brought to recover the loss sustained by the burglary.

The defendant relied on a breach of the warranties contained in the policy to prevent a recovery for the loss. The learned court submitted to the jury to determine whether the plaintiff had complied with the conditions of the policy requiring him to employ a private watchman on the premises. The engineer who acted as watchman testified that on the night of the burglary he left the building about midnight and did not return until five in the morning, and that his absence was due to the fact that it was necessary for him to work during part of the day because he had to be with the new engineer, and that he went away to get some rest during the hours indicated.

The defense interposed by the defendant and sus-

tained by the learned court below was that (a) there had been a breach of warranty on the part of the plaintiff in not employing a private watchman on his premises as required by the policy, and (b) that at the time the burglary was committed the watchman was not present, either within the rooms of the fourth floor or within the building. In reply to this position the plaintiff, appellant here, contends that the word "premises" as used in the policy means, in its relation to the provision for a watchman, not the fourth floor of the building but the building itself; that the word "employed" as used in the policy that a private watchman shall be employed does not mean that the watchman shall be present during the entire time; and that the word "watchman" as used in the policy does not mean one person personally present at the premises at all times, but means a person engaged in guarding the premises with the care usually exercised in fulfilling the duty of one looking after the premises.

These are the questions which have been argued by counsel and are now for consideration.

The view we take of the case does not require us to discuss the second and third propositions suggested by counsel for the appellant. We are of the opinion that the word "premises" means the fourth floor of the building and not the building itself, and that the policy required a watchman to be kept within the premises when not open for the transaction of business.

The language of the policy defines the word "premises" so clearly and distinctly that there is no doubt or uncertainty as to the meaning with which the parties used it in the contract. The plaintiff occupied the fourth floor of the building, the other five floors being occupied by other tenants. The policy indemnifies the assured for "direct loss by burglary of merchandise ......occasioned by its felonious abstraction from the store or rooms actually occupied by the assured and described in the said schedule (hereinafter called the

premises)." In the schedule the third statement is: "The premises occupied by the assured are as follows: Fourth floor." The second statement in the schedule: "Location of building: 1023-25-27 Race street, Philadelphia, Pennsylvania." This clearly distinguishes the "building" from the "premises" as used in the policy. As further showing that the word premises meant the fourth floor of the building and not the building itself, the fifth statement is: "No other business than that of the assured is carried on within the premises except as follows: No exceptions." There were many tenants occupying other parts of the building, but there was no other tenant occupying or carrying on business on any part of the fourth floor. The parties, therefore, have definitely settled by their own agreement the construction of the word "premises," and have applied it to "the store or rooms actually occupied by the assured," which is the fourth floor of the building on Race street. There is nothing in the case that will warrant any other construction. There being no ambiguity as to the meaning of the word as used in the policy, there is no occasion for applying any rules of construction in ascertaining its meaning.

Was there a private watchman employed within the premises when not open for the transaction of business at the time the agreement was entered into or subsequently during the currency of the policy, as required by the contract? The policy stipulated that a private watchman "is employed within the premises when not open for the transaction of business," and that such service should "be continued during the currency of this policy." It will be observed that there were both an affirmative and a promissory warranty. If the word "premises" means the fourth floor of the building, and not the building itself, neither of these stipulations was complied with by the assured. We have already stated the undisputed facts from which it appears that while the owner of the building employed a watchman for it

and another building some distance away, there was no watchman employed within the fourth floor of the building. In fact, the watchman employed by the owner did not have keys to the doors entering the fourth floor, and hence did not have access to the premises occupied by the assured. There is no ground for the contention that the watchman provided by the owner of the building was a compliance with the provision in the contract that "a private watchman is employed within the premises." This provision was manifestly material to the risk. The evident purpose was that the assured should have a watchman whose services should be performed within the rooms on the fourth floor of the building occupied by him in his manufacturing business. Whether a watchman for the whole building was sufficient for the purpose of protecting every part of it or not is wholly immaterial. It is sufficient to say that the parties have clearly and distinctly stipulated that as a part of the consideration for the contract between them a watchman should be employed "within the premises" which the assured occupied in carrying on his business. What the language means is not open to conjecture. There is no ambiguity about it, and unless the court undertakes to construe it in direct opposition to its plain and unequivocal meaning we must hold that the policy required a private watchman to be employed within the fourth floor of the building. That was not done, and the plaintiff cannot recover.

The judgment is affirmed.