## J. B. Liebman & Co., Inc., *v.* Aetna Casualty and Surety Co., Appellant.

70

Argued October 6, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Thomas F. Mount,* with him *Joseph W. Henderson,* of *Rawle & Henderson,* for appellant.

*Benjamin Sork,* of *Blumberg & Sork,* for appellee.

OPINION BY STADTFELD, J., November 19, 1936:

This is an appeal by defendant company from a judgment entered against it on a Case Stated. The facts are correctly set forth in the opinion of the lower

court by LEWIS, J., from which we quote as follows:
"It appears by the facts agreed upon that plaintiff is
engaged in business at No. 720 Market Street, Phila-
delphia, which place of business was covered by insur-
ance under a policy of insurance issued by the defend-
ant company, known as a 'Mercantile Burglary Policy'.
On Sunday, September 10, 1933, at about 8:30 A. M.,
plaintiff's place of business (closed on Sunday) was
broken into and certain articles stolen therefrom. The
plaintiff employed a private night watchman, one Wil-
liam Gemmon, whose duties ended at 7:00 A. M. on
Sundays. On the particular Sunday morning in ques-
tion, one Max Beitch, not a regular watchman, but one
of the plaintiff's salesmen, was detailed to act as a
Sunday watchman, for which service plaintiff agreed
to pay him; and it was his duty to relieve the night
watchman at 7:00 A. M. The watchman registered at
least hourly on a watchman's clock, and on the par-
ticular day in question the night watchman made his
last registration at 6:00 A. M. and left the premises
at approximately 7:45 A. M., before he was relieved by
the day watchman. As already stated the burglary oc-
curred about 8:30 A. M., after the night watchman went
off duty and left the premises, and at a time when there
was no watchman on the premises. Max Beitch, who
was detailed to act as the day watchman, did not come
to the premises until about 9:30 A. M., after the police
had discovered the burglary and had notified the man-
ager of the plaintiff's store, who was present when
Beitch arrived. Under the agreed state of facts, it was
stipulated that if the court should be of the opinion
that plaintiff is entitled to recover, judgment should
be entered in its favor in the sum of $351.60, otherwise
there would be a general finding in favor of the de-
fendant."

The policy provides, inter alia: "This insurance is
subject to the following conditions, which shall be con-

sidered as conditions precedent to any recovery under this policy." One of the conditions is: "C. The Company shall not be liable for any loss: ...... 3. Caused or contributed to by any change in the condition of the risk, or if the premises are occupied for any purpose other than that stated in the Declarations; or occurring while any protection or service promised in Items 5 and 6 of the Declaration is not maintained." The protection and service referred to are to be found in Condition U, as follows: "U. The following Declarations numbered 1 to 9 inclusive are hereby made a part of this contract and are acknowledged and declared by the Assured to be true upon the acceptance of this policy. DECLARATIONS: ...... 6. One private (state number) watchman (watchmen) employed exclusively by the Assured will be ON DUTY WITHIN THE PREMISES AT ALL TIMES when the premises are not regularly open for business while this Policy is in force, and each such watchman will make at least hourly rounds of the premises and (a) register at least hourly on a watchman's clock yes; or (b) signal an outside (yes or no) central station at least hourly no." (Italics supplied).

(yes or no).

Item 5 referred to does not in any manner control the question involved here and therefore is not quoted.

It was the plaintiff's contention that it complied with all the requirements of the policy when it employed and paid watchmen to be on duty at all times when the store was not open for business, and it is its further contention that it is not responsible, under the terms of the policy, for the neglect of their duty by the watchmen, since the plaintiff did not know of, and did not consent to the said neglect.

It was the defendant's contention that the policy in question does not cover a burglary loss occurring while any protection or service promised in Items 5 and 6 of

the Declarations is not maintained, as is provided by Condition C, Clause 3 of the policy, which is to be construed in conjunction with Condition U and Declarations Nos. 5 and 6.

The lower court adopted plaintiff's contention and entered judgment in favor of plaintiff. This appeal followed.

Appellant contends that the terms of the policy must be given a strict and rigid interpretation. Appellee contends that the policy must be given a liberal and reasonable construction, and that substantial compliance by the insured with the "watchman" clause is sufficient to impose liability upon appellant company.

The principle which seems to have been adopted in most jurisdictions is stated in Couch on Insurance, Vol. 4, Sec. 972, page 3447, as follows: "A statement that a watchman is kept on the premises does not require one to be constantly kept there, but only that one be employed at such times as men of ordinary care and skill would deem necessary under the circumstances. Again, an agreement on the part of the insured to keep a watchman on the premises when the machinery is not in operation is a condition subsequent, a breach of which releases the insurer, but the obligation must not be so strictly construed as to effect a result which the parties cannot be reasonably presumed, under all the circumstances of the case, to have intended; wherefore, the temporary absence of a watchman from the insured premises, without the consent or knowledge of the insured, during which a fire occurs, will not release the insurer, though in the application insured agreed to keep a watchman on the premises at all times when the machinery was not in operation, since he complied with the condition thereby imposed on him when he employed and retained a watchman whose competence and fidelity he had no occasion to distrust."

In *Power v. City Fire Insurance Co. of Hartford,*

8 Phila. 566, 28 Legal Intelligencer, 397 (1871), the application for the insurance policy contained the following questions: "Is a watch kept on the premises during the night? Is there a good watch clock: Is any other duty required of the watchman than watching for the safety of the premises? Is the building left alone at any time after the watchman goes off duty in the morning till he returns to his charge at evening?" To these several questions the plaintiff answered: "There is a watchman when the mill is not in use." The application concluded with an agreement by the insured that it should be a warranty on his part; the policy, when issued, also made the application a part of the contract and a warranty by the assured. The plaintiff provided a watchman but at the time of the loss at 3:00 a. m. on a Sunday morning when the mill was not in use he was absent from the premises. The defendant presented for charge, the point that the plaintiff was bound to have a watchman on the premises when the mill was not in use and "having no watchman from Saturday at 10:00 p. m. until Sunday morning was not a compliance with the contract." The court charged that the above point could not be affirmed, stating: "I cannot say that the answer was intended by the parties as a contract that the insured should always keep a watchman at the mill when it was not going, and that his sole duty at such times should be to watch against fire, always awake, and always present; nor can I say that the law constructs such a contract of the answer ...... the court cannot declare as a matter of law, what is the proper degree of a watchman's care, implied in this answer, without adding to the contract of the parties." The jury returned a verdict for the plaintiff on which judgment was duly entered.

The action of the court below was affirmed by the Supreme Court of this state in a per curiam opinion

reported in 21 Pittsburgh L. J. 70 (1873), in which the court stated that the question as to whether the insured complied with his contract had properly been submitted to the jury.

In *Axe v. Fidelity & Casualty Co. of New York*, 239 Pa. 569, 86 A. 1095, cited by appellant, the policy involved was similar in type to that in the instant case. While the Court recognized the materiality of the "watchman" clause, recovery was denied because the insured had never, at any time, employed a watchman.

In *McGannon v. Millers' National Insurance Co. of Illinois*, 171 Mo. 143, the written application signed by the insured contained the following question and answer: "Do you agree to keep a watchman on the premises at all times when the machinery is not in operation?" "Yes." The applicant further warranted that the question and answer, inter alia, was "understood as incorporated in and forming a part and parcel of the policy as a continuing warranty during the life of such policy." The plaintiff employed two watchmen to remain on the premises when the machinery was not in operation; the day watchman's duties lasted from 6:00 a. m. to 12:00 midnight, at which time he was relieved by the night watchman. On the night of the loss the day watchman left the premises at 10:15 p. m. and the fire occurred shortly before the next watch began at midnight. His absence was without the knowledge or consent of the insured. The arguments for both the plaintiff and defendant were strikingly similar to the arguments presented by counsel in the case at bar. In holding for the plaintiff, the court summarized the respective contentions and the rule applicable thereto as follows, page 149: "The defendant is in the attitude of demanding the strictest construction of its contract. It combats the argument of the plaintiff that the agreement to keep a watchman should be given a reasonable construction and it insists on the letter. The plaintiff

says when we agreed to keep a watchman it was understood to mean that we would in good faith do all that reasonable prudent men engaged in that kind of business would do to see that a watchman was on duty to guard the property when the machinery was not in operation, and that we have done. But the defendant says that there is no room for construction; the contract requires a watchman to be in the place and you warranted that he would be there every minute while the machinery was not in operation, and the obligation on our part to insure is ended when your watchman leaves his post, for a long or a short period, with or without your knowledge or consent. Parties may contract with each other to that effect, and courts will hold them to the contract regardless of the consequences, but the courts will not give to a contract such a harsh construction unless it was clear that it was so intended." The court pointed out that it was immaterial in what form the clause was worded, whether a warranty or otherwise, and further stated, page 151: "The most favorable construction that can be put upon the watchman clause in this contract is that the obligation on the part of the insured to keep a watchman when the machinery is not in operation is a condition subsequent, the breach of which would release the insurer. But the obligation must not be so strictly construed as to effect a result that the parties cannot be reasonably presumed under all the circumstances of the case to have intended." Hence it was held that the absence of a watchman for approximately one and three-quarters hours did not amount to a violation of the terms of the policy, and a recovery was sustained.

The same loss was also litigated in Michigan in *McGannon v. The Fire Insurance Company*, 127 Mich. 636. There it was likewise held that the plaintiff was entitled to recover, the court stating, p. 643: "The old rule as to warranties fully sustains the contention of

counsel for the defendant but there has been a tendency of late years to hold that the substantial fulfillment of an agreement like that contained in the application is sufficient."

The same question arose in *Hanover Insurance Co. v. Gustin*, 40 Nebr. 828, where the policy contained the question and answer: "21. Watchman. Is one kept on the premises during the night and at all other times when the works are not in operation or when the workmen are not present? A. Yes." The watchman's time continued from 5:30 p. m. until 7:30 a. m. On the night of the loss by fire, the watchman left the premises at 6:15 p. m. and was on his way back to the insured premises at 7:30 p. m. to resume his duties when the alarm was sounded. In holding for the plaintiff over the argument that the absence of the watchman precluded recovery, the court stated on page 836: "To this doctrine we cannot consent. Even giving the statements ...... the effect of a warranty ...... the language should receive a reasonable construction."

Further, p. 838: "When the loss has not happened through the fault of the insured, why should the insurer be permitted to retain the premium and refuse to perform its contract, or upon what principle of justice are courts required to search for technical objections to relieve it from liability and thereby defraud its patrons? A substantial compliance with the contract is all that is required. A mere temporary absence, which almost is all that is shown in this case, would not affect the risk. ...... The mere temporary absence of the watchman, accordingly, is held insufficient per se to relieve the insurance company of liability."

In *Sweaney & Smith Co. v. St. Paul Insurance Co.*, 35 Idaho, 303, a fire insurance policy on a mill contained the provision: "Warranted by the insured that whenever the mill described by the policy is idle or not in operation for any cause whatever, competent watchmen

shall be employed and due diligence used to keep a continuous watch both day and night. ...... The insured employed a night watchman but during the day the insured himself observed the mill from his store six to seven hundred feet from the mill and visited the mill five or six times daily. It was held that p. 316: "The evidence in this case shows a substantial compliance with the provisions of the watchman clause, and this is all that the law requires."

The court also noted the rule that insurance policies will be liberally construed in favor of the insured.

In *Virginia Fire and Marine Insurance Co. v. Buck,* 88 Va. 517, the stipulation required a "watchman on premises at night." The court below instructed the jury that if they believed "from the evidence that at the time of said application the plaintiffs had such watchman on the premises at night and continued to keep one in their employment on the said premises at night continuously ...... until the destruction of the property by fire ...... then there was no breach of said warranty, although they believed from the evidence that on the night of the fire, the watchman was, without the knowledge or consent of the plaintiffs, or either of them, absent from the premises." On appeal this charge was held "just and proper."

To the same effect are the following cases, in each of which the watchman was temporarily absent from the insured premises at the time of the loss: *Au Sable Lumber Co. v. Ins. Co.,* 89 Mich. 407; *Insurance Co. v. Metcalf,* 59 Kan. 383; *Theriault v. California Ins. Co.* 27 Idaho 476.

In the last cited case, the court pointed out, p. 481: "Numerous decisions have been cited by both appellant and respondent to assist the court in construing what is known as the 'watchman clause' in an insurance policy. While there appears to be considerable conflict of authority upon this point, a careful examination of

the decisions will demonstrate that the conflict is more apparent than real and that the question presented is one of fact rather than of law."

Appellant cites a number of cases in which it was held that the failure to keep books, as required under the conditions of a fire insurance policy, barred a recovery for loss sustained. As stated by Mr. Justice SADLER, in *Weinstein v. Globe Indemnity Co.*, 277 Pa. 388, 390; 121 A. 316: "There is nothing improper in requiring that books be kept, so that the extent of damage may be discovered. On the contrary, such a stipulation is required to prevent fraud, which may, from time to time, be attempted ...... " p. 391: "It was the duty of the insured to keep 'books and accounts,' so that, in case of theft, the exact loss could be ascertained 'therefrom,' and unless this was done, *or a substantial compliance with the requirement appeared,* a verdict for plaintiff was not justified: *Harris v. General Accident F. & L. Assur. Corp.*, 187 N. Y. Supp. 291; *Home Ins. Co. v. Williams,* 237 Fed. 171." (Italics supplied).

In *Liverpool and London and Globe Insurance Co. v. Kearney,* 94 Fed. 314, a fire insurance policy contained a provision by which the insured agreed to keep books and inventory in a fire-proof safe, "and in case of loss the assured agrees and covenants to produce such books and inventory, and, in the event of a failure to produce the same, this policy shall be deemed null and void, and no suit or action at law shall be maintained thereon for any such loss." On the night of the fire, one of the plaintiffs removed the books from the safe and in the hurry and confusion, the inventory was lost and could not be produced after the fire. Over the objection of the defendant that the clause in question should be read literally, it was held that a reasonable interpretation should be made, and the loss not being due to plaintiff's negligence, recovery was allowed.

The holding of that case was approved by the Supreme

Court of the United States in 180 U. S. 132, in which the court stated through Mr. Justice HARLAN, p. 138: "A literal interpretation of the contract of insurance might sustain a contrary view, but the law does not require such an interpretation. In so holding, the court does not make for the parties a contract which they did not make for themselves. It only interprets the contract so as to do no violence to the words used and yet to meet the ends of justice."

Whether the "watchman" clause in the instant case be treated as a warranty, or as a condition, or as a covenant, it should, under the cases cited, be liberally construed in favor of the insured. Substantial compliance on the part of the appellee entitles it to a recovery upon the policy. While some cases in the Federal courts and in other jurisdictions hold to the contrary, the cases which we have cited, and the reasoning in support thereof, are more in consonance with the policy announced by our appellate courts, in the construction of insurance policies, the language used therein being that of the insurance company. In the ascertainment of the intention of the parties, any doubt must be resolved in favor of the insured.

While a failure to employ a watchman will preclude a recovery, yet, once he is employed, a loss occasioned by his mere negligence, unaffected by fraud or design on the part of the insured, is generally held to be within the protection of the policy. Quoting from *King Brick Manufacturing Co. v. Phoenix Ins. Co.*, 164 Mass. 291-295 (1895), where the stipulation required a "constant watch," the watchman employed by the insured was absent at the time of the loss, through negligence or misunderstanding without the knowledge of the plaintiff or anyone of its officers. In holding for the plaintiff, the court declared: "The duty was thus imposed upon the insured to use all reasonable care, and to take all reasonable means to see that a constant

watch was kept. This was done by making a rule to that effect, and providing a watch. No negligence or fraud is imputed to the assured. The loss was caused by negligence of the servant, and this is a risk covered by the insurance. There was therefore no breach in the terms of the policy by the insured." To same effect see *McGannan v. Millers' National Ins. Co.,* supra; *Mannheim Ins. Co. v. Clarke & Co. Tex. Civ. App.,* 157 S.W. 291 (1913) ; *Andes Ins. Co. v. Shipman,* 77 Ill. 189 (1875) ; *Houghton v. Mfg. Mutual Fire Ins. Co.,* 8 Met. (Mass.) 114; *Phoenix Assur. Co. of London v. Coffman,* 10 Tex. C. A. 631, 32 S. W. 810 (1895) ; *Sierra Co. v. Hartford Fire Ins. Co.,* 76 Cal. 235, 18 Pac. 267 (1888).

Under principle and authority, we believe that the lower court arrived at a correct conclusion. The assignment of error is overruled and the judgment of the lower court affirmed.