## DEMARY v. ROYAL INDEMNITY CO. *

### No. 1943.

Court of Appeal of Louisiana.
First Circuit.

Jan. 11, 1939.

For prior opinion, see 182 So. 389.

Clement M. Moss, of Lake Charles, for appellant.

Pujo, Hardin & Porter, of Lake Charles, for appellee.

DORE, Judge.

The issues in the case are fully stated in the original opinion. 182 So. 389. All defenses have been abandoned, except the fourth, relative to the failure of the insured to have two custodians on duty at the time of the robbery. The application for a rehearing was granted and the case is now before us on the rehearing in order to give further consideration to this question alone.

*Writ of error denied by Supreme Court March 6, 1939.

In Paragraph III of the policy the defendant insurance company agreed to indemnify the plaintiff (the insured) against loss or damage to any money or securities occasioned by robbery, or attempt thereat, committed within the insured's premises. Item 10, Section (c), of the declarations made part of the policy, stipulates the property covered under said Paragraph III as money, securities, etc. (interior, office or store robbery), "from within the premises while a custodian and at least ——— other employee(s) are on duty therein." But by a schedule for office robbery endorsed on the policy it is stated that the insurance applying under Section (c), Item 10, of the declarations, being under Insuring Paragraph III, attaches and applies only in the amount specified for the location, Old Spanish Trail, Calcasieu Parish, "Number of custodians on duty, 2," "Guard or alarm within premises, none," "amount of insurance, $1500." The location is just over on the Louisiana side of the Sabine River, and is known as the "Border Cafe." The place is a combined saloon, restaurant and clubhouse.

In our opinion, the policy is intended to indemnify the plaintiff against loss of money and securities by robbery of the premises, and contemplates that the insured shall keep two custodians on duty in the premises at all hours, the policy covering said risk for the full twenty four hours of the day. We do not have to resort to Webster's Dictionary, or any source, to ascertain the meaning of "custodians" as the word is used in the policy. The policy itself defines the meaning of the word as used in the policy. Among other persons, the word "custodian" shall mean "(4) any person not less than seventeen nor more than sixty-five years of age, who is in the regular employ of the insured and duly authorized by him to act as paymaster, messenger, manager, cashier, clerk or sales person, and while so acting to have the care and custody of property covered hereby. In no event shall a watchman or a porter be considered a custodian."

The premises are defined to mean the interior of the building where the insured carries on the business occupied solely by the insured. Reading all of these provisions together, it seems to us that the policy contemplates and requires the insured to keep at least two employees on duty in the premises. The question then arises: Did the plaintiff have two employees on duty at the time of the robbery?

In the first place, it must be remembered that there is quite a difference in requiring the insured to keep a certain number of employees on duty in whose care the property is intrusted, and in requiring him to keep a certain number of guards or watchmen on duty to protect the property. The former (employees) are there principally as servants and agents of the employer to carry on his business and serve his customers, and only incidentally to protect and defend the property of the employer, while the latter (guards and watchmen) are there to repel with force if necessary any attempt to take the employer's property, their principal duty being to protect the property, and not to attend the business or serve the customers of the employer.

It follows from this difference that a less rigid and strict compliance with the requirement for keeping a certain number of employees on duty in policies of this kind would be required of the insured than would be the case if the requirement was for him to keep a certain number of guards or watchmen on duty. In the former case, a substantial compliance is sufficient; while in the latter, a more exact compliance would be required. The protection to the employer's property given by the employee as he goes about his duties is more a moral effect on the would-be robber, while the protection afforded by the guard or watchman prepared and watching for an attack is calculated to put fear in the heart of the outlaw.

The testimony shows that plaintiff kept two employees on duty at the Border Cafe during the night. The robbery occurred a few minutes after midnight. A man by the name of Abshire, called "Shorty", and another employee named Brasseux, called "Uncle", were on duty up to midnight on that night. Another employee named Mitchell, called "Smitty", was supposed to relieve Brasseux at midnight, but Mitchell was late. Brasseux waited until about five minutes after midnight before leaving for his home in Orange, Texas, just across the Sabine River, leaving only Abshire on duty. Five or ten minutes after Brasseux left, the two robbers came up to the place, and after ordering some drinks, held up and bound Abshire and proceeded to rob the place. Some five or ten minutes after the robbers

had appeared and while they were in the act of robbing the place, Henry Demary, another employee, came on duty. The latter arrived about 12:15 or 12:20, some ten or fifteen minutes after Brasseux had left. Demary was also bound by the robbers who proceeded to complete their hold-up.

At the time the robbery began, Abshire was the only employee actually in the premises. Brasseux was some four hundred feet away on his way home for the night; the other employee, who was to come on duty with Abshire, did not arrive until some five or ten minutes after the robbery began.

But, in so far as the plaintiff himself is concerned, he did not fail to comply with the provision of the policy requiring him to keep two employees on duty in the premises. He provided for and employed two persons to be on duty all night, and the fact that only one of these employees was actually in the premises during an interval of five or ten minutes before the other arrived was on account of the neglect or carelessness of the employee and not that of plaintiff. The principle involved is similar to that in the case of McGannon v. Millers' Nat. Insurance Company, 171 Mo. 143, 71 S.W. 160, 94 Am.St.Rep. 778, where a fire policy required the insured to keep two watchmen on duty, and the fire occurred after one of the watchmen had left and before his successor had reached his post of duty. The Missouri Supreme Court held that the insured did not warrant that neither of the watchmen employed by him would temporarily leave his post of duty.

In our opinion the cases cited by defendant on this point are not controlling. Three of those cases, Axe v. Fidelity & Casualty Company, 239 Pa. 569, 86 A. 1095, 46 L.R.A.,N.S., 474; Pogue Company v. Fidelity & Casualty Company, 6 Cir., 299 F. 243, and Norwick Union Indemnity Company v. H. Kobacher & Sons Company, 6 Cir., 31 F.2d 411, involved watchmen and not employees or custodians. The first and third of the cited cases involved a failure of the insured to comply with his promissory warranty to keep one or two watchmen in the premises—the first in his failure to keep one watchman, with no other duties, in the premises when not open for business; the insured did not comply with that warranty because the owner of the building provided a watchman for the entire building in which the insured's business was located, and no watchman was provided by the insured himself; in the third case, the policy required two watchmen, but the insured employed only one who signalled to an outside agency. The only difference in the second case cited above and the present case is that in the cited case the insured was required to keep two watchmen within the premises not over sixty-five years of age, while in the present case the insured was required to have two custodians on duty. The insured in the cited case breached his promise by employing watchmen over sixty-five years of age. In the cited case it was a watchman who was not on duty at the time of the robbery; in the present case, it was an employee who was not on duty at the precise time of the robbery.

In the other case cited by defendant, the most nearly in point, Goldstein v. Royal Indemnity Company, Mass., 7 N.E.2d 420, the policy required the *insured* and an employee to be on duty in the premises as a condition precedent to recovery for a robbery of the premises. A robbery occurred while the store manager was in the store alone and before the *proprietor* (the insured) arrived. There the insured himself was responsible for the failure to comply with the condition in the policy.

Considering that, in this case, the insured was only required to keep two employees or custodians on duty, and the further fact that whatever technical breach of this condition that might have occurred was caused by the neglect of one of these employees, we do not think there was such a substantial and material breach of a condition in the policy as to bar a recovery. Any other conclusion would result in a strict construction rather than a liberal one as favored by our courts.

For these reasons, our former decree is reinstated and made the final judgment of the court.